WILLIAM J. O'BRIEN *vs.* JOHN P. O'BRIEN & others.

Worcester. September 24, 1923. — October 10, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, PIERCE, & JENNEY, JJ.

*Evidence,* Presumptions and burden of proof. *Estoppel. Fraud. Corporation,* Affidavit by officer. *Trust,* Constructive.

Where, in a suit by a stockholder in a Connecticut corporation against two stockholders and officers therein and a Massachusetts corporation to which the assets of the Connecticut corporation had been transferred in accordance with a vote of a majority of its stockholders, the prayers of the bill were in substance for an adjudication that the plaintiff had an interest in the Massachusetts corporation and for a transfer of that interest to him, and there was no evidence of oppression or fraud, the plaintiff's right to maintain the suit rested upon his ability to prove that his interest as a shareholder in the assets of the Connecticut corporation which thus were transferred to

the Massachusetts corporation had a property value, and evidence offered by the defendants to prove what was the real value of the assets of the Connecticut corporation transferred to the Massachusetts corporation was admissible, although it tended to show a less value than that shown by an affidavit filed by one of the defendants and another person as officers of the Massachusetts corporation at its organization.

It *was said* that, in the circumstances above described, it was needless to consider what rights, if 'any, the affidavit gave to the Commonwealth or to creditors to attack it or to hold the affiants and the corporation estopped to deny the truth of its declarations.

An exception by the plaintiff to findings by the master, in the suit above described, negativing fraud and false representations on the part of the individual defendants was overruled, there being no evidence reported nor facts found that as a matter of law required the master to find that either of the individual defendants, who were the plaintiff's brother and the brother's wife, occupied a position of trust and confidence toward the plaintiff other than that of mere consanguinity, or that a constructive trust existed.

In the suit above described, a consideration of all the facts found by the master and of the inferences that properly might be drawn therefrom was *held* to lead to the conclusion that the Connecticut corporation was insolvent when its assets were transferred to the Massachusetts corporation, that the Massachusetts corporation paid out more than it had received from the Connecticut corporation in the payment of the debts of that corporation, and that no valuable interest of the plaintiff was transferred to the Massachusetts corporation with the transfer of the assets of the Connecticut corporation; and upon a reservation of the suit for determination by this court, it therefore was ordered that the bill be dismissed.

At common law, a majority of the shareholders of an insolvent corporation may dispose of its property in cases which are free from unfairness, oppression and fraud; and in an action where the propriety of such a disposition by a Connecticut corporation is in issue and no Connecticut statute is in evidence, the rule of the common law governs.

BILL IN EQUITY, filed in the Superior Court on December 22, 1919, and afterwards amended, by a stockholder in Otter River Board Company, a Connecticut corporation, against John P. O'Brien, Margaret O'Brien and a Massachusetts corporation of the same name as, and a successor to, the Connecticut corporation, seeking a determination of " what portion of the stock in the new Otter River Board Company was issued to the stockholders of the old Otter River Board Company in exchange for their interest in the property and franchise of said company; and to determine the portion thereof to which the plaintiff was entitled and whether the same has ever been issued to the said John P. O'Brien or any one else, and, if the same has been

issued to the said John P. O'Brien or Margaret O'Brien, to order and decree that the said John P. O'Brien or Margaret O'Brien, as the case may be, transfer to the plaintiff his fair proportional part of the stock held by them; and that the said Otter River Board Company recognize said transfer and transfer said stock upon its books to the plaintiff; or, if it shall be determined that no stock has been issued to any one in lieu of the plaintiff's interest in said old Otter River Board Company, that the defendant company be ordered and decreed to issue to the plaintiff the amount of stock *pro rata* to that issued to the other holders of stock in the old company and that all the defendants, or so many as may be found liable, be ordered and decreed to account to the plaintiff for his just share of the profits of the new Otter River Board Company since it took possession of the property of the old Otter River Board Company as aforesaid, and for such other relief as equity may require."

The suit previously was before this court on an appeal by the plaintiff from a decree dismissing the original bill after the sustaining of a demurrer of one defendant; and the decree was reversed by a decision reported in 238 Mass. 403.

After an amendment to the bill, the suit was referred to a master. Material facts found by the master and objections and exceptions by the plaintiff to the master's report are described in the opinion. Under G. L. c. 231, § 111, *Hall*, C.J., reserved and reported the suit for determination by this court "upon the pleadings as amended, the master's report, and the objections and exceptions of the parties thereto, without making any decision thereon."

*H. W. Blake*, for the plaintiff.

*W. M. Quade*, (*M. L. Moore* with him,) for the defendants.

PIERCE, J. After the decision of this court overruling the demurrer, reported in 238 Mass. 403, an amended bill and answers thereto were filed in the Superior Court. The suit was referred to a master to report the facts and such questions of law as either party might request. Without a report of the evidence the master made and filed his report, with the objections of the plaintiff and defendants appended thereto. The plaintiff and defendants duly filed exceptions

in the Superior Court based upon the aforesaid objections. On a reservation and report, the case is before this court " upon the pleadings as amended, the Master's Report, and the objections and exceptions of the parties thereto, without . . . any decision thereon."

The master states, in substance, the case of the plaintiff as alleged in his bill, the essence of the prayers for relief, the denial by all the defendants of any liability, the claim that any liability, if any ever existed, is barred by laches of the plaintiff, and the specific denial by John P. and Margaret O'Brien of allegations of fraud.

In substance, the master then finds the material facts which follow: In December, 1906, John P. O'Brien (hereinafter called John) organized The Otter River Board Company, for the purpose of buying, selling and manufacturing binder boards and kindred products, with a capital stock of $50,000 divided into five hundred shares of a par value of $100 each. The plaintiff, William O'Brien (hereinafter called William), and the wife of John (hereinafter called Margaret), at the request of John acted as incorporators to comply with the laws of Connecticut requiring three incorporators. John was elected president and treasurer; William was elected secretary; and John, William and Margaret were elected directors. John and Margaret continued to hold their respective offices until the organization of the Massachusetts corporation, hereinafter set forth; while William held the office of clerk and director until the annual meeting early in 1913, when another person was elected in his stead. About January 10, 1907, John conveyed to the corporation, for $20,000, payable in stock of the corporation at par, and subject to a mortgage of $10,000, which the corporation assumed and agreed to pay, a plant he had purchased for $10,000 at Otter River, in Templeton, Massachusetts; this plant formerly had been a woolen mill and then consisted of land, water privilege, and buildings. Two hundred shares were issued to John and ten shares each to William and Margaret. As regards the ten shares issued to William the master, upon facts recited, warrantably found " that when said shares were issued it was the intention of

all concerned that they should be the property of the plaintiff
. . . and that the plaintiff . . . was the owner of said ten
shares." Soon after the organization, in addition to the
aforesaid two hundred and twenty shares, two hundred and
twenty-five shares were sold for cash, of which John pur-
chased one hundred and thirty-eight for $13,800. The cor-
poration began business in 1907 and continued until March
28, 1913, when the plant was almost entirely destroyed by
fire.

At the time of the fire the real estate was subject to a
mortgage of $11,800. The sum of $10,800 was collected as
insurance on the buildings and paid to the holder of the real
estate mortgage, who thereupon discharged said mortgage,
deducting $1,000. About $2,500 was collected in insurance
on the machinery, and paid to a firm holding title to said
machinery under a lease agreement, leaving still owing on
said machinery $7,985. The master describes the real estate
and finds that its value immediately after the fire " did not
exceed $10,000, and probably was very much less." He
finds that the machinery in value then did not exceed $2,000;
that the cash and bills then receivable did not exceed $7,000,
and that John was not indebted to the corporation. He
further finds that " it is difficult to put any value upon . . .
[the] good will " of the business, and states his reason for
such conclusion. The total assets thus shown were approxi-
mately $19,000. The master specifically finds that the
business of the corporation " never had been a financial
success, no dividends ever had been paid, and, for the greater
part of the time, the corporation had had a hard struggle,
financially;" that after the fire there were no prospective
purchasers for the plant and it was felt generally by the
stockholders, then eight in number, that the corporation
was insolvent and they would get nothing for their stock.

In this state of the financial affairs of the corporation, in
the summer of 1913, John interested one Heselton in the
business, with the result that John and Heselton agreed to
put respectively $5,500 and $5,000 into a new corporation
which was to be organized under the laws of Massachusetts
to take over and continue the business of the Connecticut

corporation; and they also agreed that shares in the Massachusetts corporation should be issued, without payment therefor, to certain stockholders of the Connecticut corporation, to wit, to one Daub, one Videon, one J. H. Wallace and one Thomas F. Wallace, respectively, eight, eleven, six and seven shares, those amounts being slightly less in number than one half the number of shares held by them, respectively, in the Connecticut corporation; to James H. O'Brien, who had a claim for labor against the corporation but was not a shareholder, twenty shares; to Bartley O'Brien, who owned fifteen shares and who also had a claim for labor, twenty-one shares. To John one hundred and five shares were issued, which number was arrived at upon consideration of the fact that he owned three hundred and thirty-eight shares of stock of the Connecticut corporation, that he had paid $10,000 for the plant which he had conveyed to that corporation, that he had also paid either before conveyance into the plant or for its benefit $2,500, for which he received no stock, and upon the further consideration that Heselton was to pay par for the stock which he was to receive in the Massachusetts corporation. John had never drawn any salary from the Connecticut corporation on account of his services and no stock in the Massachusetts corporation was allowed him on account of his salary. In addition to the above shares, it was agreed that Heselton was to receive fifty shares and John fifty-five shares for the payment by them respectively of the aforesaid sums of $5,000, and $5,500. No shares were to be given to Margaret, although she had paid for certain shares in the Connecticut corporation. No shares were allotted to William because John and Heselton considered he had paid nothing for his shares in the Connecticut corporation.

On August 26, 1913, the Massachusetts corporation was organized with an authorized capital of $75,000, which was divided into seven hundred and fifty shares of a par value of $100 each. John P. O'Brien was elected president and treasurer, Heselton, clerk; and they, with said James H. O'Brien, Thomas F. Wallace and Daub, were the directors. All of them, with the exception of Heselton, were officers

of the Connecticut corporation, the purposes of the Massachusetts corporation being substantially the same as those of the Connecticut corporation. At about the time of the organization of this Massachusetts corporation all the stockholders of the Connecticut corporation, except the plaintiff and one other, assembled at the office of John at Windsor Locks and he communicated to them the results of his negotiations with Heselton, which included the provision for issuing to them without payment therefor of certain shares of stock as above set forth, and they agreed to accept said shares and to surrender their shares in the Connecticut corporation. But there was no evidence of any vote at any time by the stockholders or directors of either corporation with reference to any surrender or exchange of shares. The master finds that there is no evidence that any stockholder surrendered his shares; and further finds that after the conveyance hereinafter referred to the shares had no value.

The master finds that thereafter a meeting of the stockholders of the Connecticut corporation was duly called and held at said Windsor Locks; that a notice of this meeting was mailed to the plaintiff; and that before said meeting he (the plaintiff) had knowledge that said meeting was to be held; that at that meeting all the stockholders were present, except two, one of whom was the plaintiff, and that it was unanimously voted that the Connecticut corporation convey all its property of every kind and description to the Massachusetts corporation, upon consideration that said Massachusetts corporation assume and agree to pay all debts of said Connecticut corporation; and he further finds that there is no evidence of any agreement among the stockholders who attended this meeting regarding the vote to be passed thereat.

A conveyance of the real estate was made by the Connecticut corporation to the Massachusetts corporation by deed dated and acknowledged September 11, 1913, and recorded September 13, 1913. There was no evidence before the master of a bill of sale of the personal property, but the Massachusetts corporation took possession thereof

and afterwards paid the debts of the Connecticut corporation, which then amounted to $18,338.83. The property received by the Massachusetts corporation was the same as that remaining immediately after the fire, except that the cash and bills receivable amounted to $6,200 in place of $7,000 — a total value of $18,200. The master finds that the consideration paid by the Massachusetts corporation was fair and adequate, unless it is bound by the recitals as to payments for said property, in its certificate of organization, prepared by its counsel and signed and sworn to by John P. O'Brien, president and treasurer, and Heselton, clerk of the Massachusetts corporation. Said certificate states: "That the amount of the capital stock then to be issued was 750 shares of common stock, to be paid for as follows:

| | |
|---|---|
| " Cash, | 425 shares |
| " Factory lot, factory water power at said Otter River, about eight acres, | 150 shares |
| " Machinery, | 100 shares |
| " Good Will, | 50 shares |
| " Services already rendered, | 25 shares " |

The master found that said " seven hundred and fifty shares had no reference whatever to the real value of the property, but were issued solely for organization purposes."

The plaintiff duly filed an objection, and thereafter his exception based thereon, to " the finding of the master that the consideration paid by the corporation was fair and adequate because under the circumstances disclosed in the report, the values fixed in the certificates of the organization of the Massachusetts corporation are binding upon the parties for the purposes of this case." The plaintiff also objected and duly filed his exception to the finding " that John P. O'Brien and Heselton signed and swore to said certificate of organization without knowing its contents because said John P. O'Brien and Heselton are conclusively presumed to have known the contents of said certificate." The plaintiff also objected and duly filed his exception to the finding that " the consideration paid by the corporation was fair and adequate " " for the reason that for the purposes

of this case, the values put upon said property in the organization of the Massachusetts corporation is binding upon parties thereof." The plaintiff further objected and duly filed exceptions " to the reception and consideration by the master of evidence . . . tending to show a less value of said assets than that fixed in said certificate of organization."  ·

These four exceptions must be overruled. The plaintiff's right in this case, in the absence of evidence of oppression or of fraud, rests upon his ability to prove that his interest as a shareholder in the assets of the Connecticut corporation had a property value, that is, that there would have been due to him something of pecuniary value had the assets and liabilities of that corporation been fairly and honestly adjusted and liquidated at the time the assets of that corporation were transferred by a majority of its stockholders to the Massachusetts corporation upon its assumption and payment of the debts of the Connecticut corporation. It is plain that the real assets — the assets in which the plaintiff had an interest proportionate to his share holdings — could neither be increased nor diminished by any affidavit of their value made by officers in another corporation for a purpose other than the determination of the distributive value of the assets of the Connecticut corporation among its stockholders. It is needless to consider what rights, if any, the affidavit gave to the Commonwealth or to creditors to attack it or to hold the affiants and the corporation estopped to deny the truth of its declarations.

The charge of the plaintiff that John P. O'Brien " induced said company to issue the portion of stock thereof which should have been issued to the plaintiff, to himself, or to his wife, Margaret O'Brien, by fraudulently representing that he had acquired the plaintiff's interest in said old company and was entitled to the plaintiff's portion of the stock to be issued in the new company in exchange for the property of the old, and would account to the plaintiff for the same " is not supported by the reported facts, nor by the master's finding; he finding, in regard thereto, that " John P. O'Brien did not represent at any time that he had acquired the plaintiff's interest in the Connecticut corporation, was entitled to

receive the plaintiff's stock in the Massachusetts corporation and would account to him therefor, and that, while he transferred his stock to his wife Margaret, it was not done for the purpose of hindering or delaying the plaintiff, and . . . that neither said John P. nor his wife Margaret, was guilty of any fraud in the premises." There is no evidence reported nor facts found that required the master to find any relation of trust or confidence between John and the plaintiff, or between the plaintiff and Margaret, upon which the plaintiff's claim of a constructive trust can rest other than that of mere consanguinity. It follows that the sixth objection and exception must be overruled.

The first exception, based on the first objection, is not argued and consequently is treated as waived.

A consideration of all the facts found by the master, and the inferences that may properly be drawn therefrom, lead to the conclusion that the Connecticut corporation was insolvent when its assets were transferred to the Massachusetts corporation; that the Massachusetts corporation paid out more than it had received from the Connecticut corporation in the payment of the debts of that corporation; and that no valuable interest of the plaintiff was transferred to the Massachusetts corporation with the transfer of the assets of the Connecticut corporation. In the absence of any evidence of a controlling Connecticut statute, it is the established law that a majority of the shareholders of an insolvent corporation may dispose of its property in cases which are free from unfairness, oppression and fraud. *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393, 404, 405. *Callender, McAuslan & Troup Co.* v. *Flint*, 187 Mass. 104. Compare G. L. c. 156, § 42. See cases collected in 14 C. J. § 1323.

These conclusions make it unnecessary to consider the defences of the statute of limitations and laches, as urged by the defendants.

It follows that interlocutory decrees should be entered overruling the plaintiff's exceptions and affirming the master's report; and that after the filing of these decrees a final decree should be entered dismissing the bill, with costs.

*Decrees accordingly.*