MICHAEL CALNAN & others *vs.* GUARANTY SECURITY CORPORATION.

ANNA M. HERMANNS & another *vs.* GUARANTY SECURITY CORPORATION & others.

Suffolk.    April 2, 1930. — June 2, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Equity Jurisdiction*, Suit by minority stockholders of corporation. *Equity Pleading and Practice*, Bill, Answer, Findings by trial judge. *Corporation*, Sale of assets, Solvency.

In a suit in equity by minority stockholders of a corporation against the corporation, a second corporation and individuals who were directors of both corporations, to enjoin the sale of the assets of the first corporation to the second corporation, the defendants in their answer alleged certain reasons why the first corporation had been prompted to sell its assets to the second corporation at a previous time; that an attempt had been made at that time to have the sale enjoined, but that an injunction had been refused; and that the plaintiffs brought the present suit in bad faith for the purpose of enabling themselves to manipulate their stock and of forcing the corporations to purchase it upon terms in excess of its value. A motion by the plaintiffs to strike out those allegations from the answer as "scandalous, irrelevant and immaterial matters" was denied. The plaintiffs appealed from such order and subsequently appealed from a final decree dismissing the bill. *Held*, that

(1) The motion should have been allowed as to the allegation concerning the previous proposition of sale;

(2) The motives of the plaintiffs in bringing the suit were immaterial; and the motion should have been allowed as to the allegation concerning such motives;

(3) This court considered the suit without regard to the portions of the answer which should have been struck out.

An answer by the defendants to a certain paragraph of the bill in a suit in equity, "The respondents neither admit nor deny the allegations . . . [thereof] and call upon the plaintiffs to prove the same," does not specifically admit, deny or explain such allegations; and, under Equity Rules 6, 23 (1926), the defendants must be taken to have admitted them.

In a certain paragraph of the bill in the suit in equity above described, the plaintiffs alleged that the first corporation "has earned sufficient profits to pay a dividend, and if properly managed, could consistently pay dividends." The defendants made no answer to this paragraph.

The trial judge found that the business of that corporation had not been profitable for several years and that its assets had been substantially depleted. Upon the appeal from the final decree, it was *held*, that

(1) By failing to answer that paragraph, the defendants admitted the allegations thereof;

(2) This court must disregard the findings by the trial judge so far as they were inconsistent with such admitted facts.

It appeared in the suit in equity above described, which was commenced in 1929, that the first corporation had common stock, and preferred stock of a par value of $10 a share without voting power; that the plaintiffs were holders of both preferred and common stock; that in 1924 and thereafter the common stock had no value and the preferred stock was worth considerably less than par; that the second corporation in 1924 purchased sufficient of the preferred and common stock of the first corporation to give it control thereof; that the business of the first corporation was seriously affected between 1925 and 1929 by constant litigation; that in 1929 it "was insolvent, but would have been solvent provided its stock liability could be eliminated"; that, if its debts were paid in liquidation, there would be a substantial amount remaining to be paid to the preferred stockholders; that the sale sought to be enjoined was voted, over the objection of the plaintiffs, by more than a two thirds vote of the stockholders entitled to vote, it being necessary that the votes cast by the stock owned by the second corporation be counted to make such two thirds; that the officers, directors and agents of the second corporation acted in good faith in casting such votes; that the vote was "free from unfairness, oppression or fraud"; that the terms of the sale were that the second corporation should assume all the liabilities of the first corporation and issue one of its bonds, of a par value of $5.75, in exchange for each share of preferred stock of the first corporation "when accompanied by the common stock also owned by . . . [the] preferred shareholder"; and that the officers and directors of both corporations acted in good faith without fraud in connection with the proposed sale, which was, "taking into consideration the assets and liabilities and the history of each corporation, fair and reasonable." A final decree was entered dismissing the bill. Upon appeal by the plaintiffs, it was *held*, that

(1) The first corporation was solvent since it had the financial ability to pay its debts: its ability further to pay to its stockholders the par value of their stock was immaterial on the issue of its solvency;

(2) In the circumstances, at common law the majority stockholders of the first corporation, exercising their judgment and discretion in good faith, properly might authorize a sale of all its assets for an adequate consideration, even though the corporation was solvent and even over the objection of preferred stockholders having no vote and of minority common stockholders;

(3) Under G. L. c. 156, § 42, the sale, authorized in good faith by two thirds of the stockholders of the first corporation having the right to vote, was not invalid as to the plaintiffs merely by reason of

the circumstance that the consideration received by the first corporation was bonds of the second corporation and not money;

(4) The sale could not be said to be voidable on the ground that the two corporations had a common board of directors or a common majority thereof;

(5) The bill properly was dismissed.

BILL IN EQUITY, filed in the Supreme Judicial Court on March 13, 1929, and subsequently transferred to the Superior Court. Also, a

BILL IN EQUITY, filed in the Superior Court on March 19, 1929.

A motion to strike out paragraphs 17 and 23 of the defendants' answer in the first suit was heard by *Bishop*, J., and was denied. The plaintiffs appealed from such order.

The suits were consolidated by order of *Cox*, J., and subsequently were heard by *Bishop*, J. The pleadings and material facts found by the judge are described in the opinion. The plaintiffs held both preferred and common stock of Guaranty Security Corporation. A final decree dismissing the bills was entered. The plaintiffs appealed.

*J. B. Jacobs*, for the plaintiffs.

*J. H. Devine & A. Lincoln*, for the defendants.

PIERCE, J. These are two suits in equity brought by minority stockholders of the defendant Guaranty Security Corporation (herein called the Guaranty Corporation) against that company, the Finance Corporation of New England (herein called the Finance Corporation) and the individual defendants, who are directors of both companies, to enjoin the sale of the assets of the Guaranty Corporation to the Finance Corporation in exchange for bonds of the Finance Corporation to be delivered to the preferred shareholders of the Guaranty Corporation; or, if it shall appear that such sale of the assets of the Guaranty Corporation is proper and legal, then for a decree that the Finance Corporation be ordered to pay the plaintiffs the fair cash value for their stock.

These cases were consolidated into one suit. They were heard in the Superior Court by a judge who filed a statement of his rulings and findings, and an order for a decree

"dismissing these bills with costs to the defendants." The consolidated suits are before the court on the appeals of the plaintiffs from the final decree dismissing the bills with costs to the defendants, and from an interlocutory decree denying the plaintiffs' motion to strike out paragraphs seventeen and twenty-three of the defendant's answer in the Calnan case. The record of the appeals does not contain the evidence, if any, which was received at the hearing.

The material facts as disclosed by the statement of the judge of the Superior Court in substance are as follows: The Guaranty Corporation was organized December 16, 1918, under the business corporation law of this Commonwealth, with preferred and common stock. The preferred stock has a par value of $10 a share, is preferred as to dividends but has no voting power. The Finance Corporation was organized under the business corporation law of this Commonwealth on December 3, 1918, with preferred and common stock; its common stock, but not its preferred stock, has voting power. Both corporations were organized for the purpose of lending money on real estate and on construction and other loans. Prior to 1924 they had no connection with each other. Early in that year the common stock of the Guaranty Corporation had become of no value and the preferred stock was worth considerably less than par. At the hearing in 1929 the common stock was still of no asset value and the preferred stock was worth only slightly more than it was in 1924. In February, 1924, the Finance Corporation purchased forty-two thousand, one hundred forty-four shares of the common stock of the Guaranty Corporation and thereafter, in its own name or in the name of its nominees, owned sixty-eight thousand shares of the common stock of that company out of a total issue of eighty-nine thousand, two hundred twenty-eight shares. During the same month it voted to purchase, and pursuant thereto acquired, seventy-five thousand, three hundred forty-six shares of the preferred stock out of the one hundred twenty-nine thousand, three hundred thirty-eight shares outstanding, for which it paid either in cash or bonds not more than $2.50 per share, with the financial results that it

had an investment of $188,365 in preferred stock and $65,000 in common stock — that is, a total investment of at least $253,365 in stock of the Guaranty Corporation. At no time has the Finance Corporation made active or concerted efforts to purchase the stock of the Guaranty Corporation, but has purchased it as it was offered to it by individuals or on the market. It is to be noted that by January 6, 1925, the Finance Corporation had secured a total of fifty thousand, three hundred twenty-one shares of common stock of the Guaranty Corporation, which gave it a majority of the outstanding common stock of eighty-nine thousand, two hundred twenty-eight shares, and the voting control of the corporation.

Since February 19, 1925, the Guaranty Corporation has been almost constantly, and at times the Finance Corporation also has been, engaged in litigation arising out of suits brought by some of the minority stockholders of the Guaranty Corporation and as a result the business of the Guaranty Corporation has been seriously affected. The trial judge found that the Guaranty Corporation on March 19, 1929, "was insolvent, but would have been solvent provided its stock liability could be eliminated"; that "The Finance Corporation, on the other hand, was solvent, although there was only a limited market for its bonds and most of its bonds which were offered and sold by the holders thereof were bought in by the Finance Corporation for about fifty cents on the dollar."

At the annual meeting of the stockholders of the Guaranty Corporation on March 19, 1929, pursuant to the call for that meeting, it was voted to sell "all of its assets in accordance with the balance sheet as of March 18, 1929," exhibited at the meeting, upon the agreement of the Finance Corporation "to assume all the liabilities of the Guaranty Security Corporation" and "to issue to the preferred shareholders of the Guaranty Security Corporation during the period of six years from the date of transfer of its assets, its twenty-year five per cent Gold Debenture Bonds dated June 1, 1927 with June 1, 1929 and subsequent coupons attached, payable June 1st and December

1st of each year, upon the surrender by the shareholders of their preferred and common stock duly endorsed, each preferred shareholder to be entitled to bonds at the par value of $5.75 for each share of preferred stock so surrendered when accompanied by the common stock also owned by such preferred shareholder." It was further voted that "upon acceptance by the Finance Corporation of New England of the offer of the shareholders of the Guaranty Security Corporation to sell its assets in exchange for bonds as hereinbefore stated, the Treasurer be, and hereby is, authorized to effect the transfer of said assets of the Guaranty Security Corporation to the Finance Corporation of New England and is empowered and directed for and in behalf of this corporation to sign, seal, acknowledge and deliver all legal documents necessary or incidental in the pursuance of the aforesaid votes." Before the vote was put, counsel representing the minority stockholders asked to have recorded their objections to any officer or employee of the Finance Corporation or the Finance Corporation voting, on the ground that they were disqualified; and, the vote being put, he desired to be recorded as voting in opposition.

In reference to the action of the stockholders and its legal effect, the trial judge found that "The vote in favor of the sale was carried by 68,806 votes, which was more than two thirds of the stock outstanding and entitled to vote"; that "44,517 votes were cast by the stock owned by the Finance Corporation"; that "If the votes cast by the Finance Corporation were cast without authority or without right, then less than a majority voted on the question and, of course, the question was not carried in the affirmative by a two-thirds vote." He found and ruled, however, "that the votes cast by the Finance Corporation were cast with authority and that the corporation had the right to vote the stock owned by it." He found that the "purpose of this vote was to consolidate the two corporations for the more economical administration of the affairs of both corporations and would probably result, if carried into effect, in the ultimate dissolution of the Guar-

anty Corporation. The Finance Corporation has in the past purchased the preferred stock of the Guaranty Corporation, which has a par value of $10 per share, paying for it when it paid in bonds at the rate of $5.75 in bonds, and would redeem its bonds at the rate of $2.50 per bond. In this way, the preferred stock of the Guaranty Corporation has a market value of 25% or $2.50 cash per share."

On evidence introduced as to the solvency or insolvency of the Finance Corporation, he states: "The assets of this corporation consist of mortgages, real estate taken under foreclosure, notes secured by collateral, and shares of stock in other corporations. While I am unable, on the evidence introduced, to determine with any degree of accuracy the value of the stock or of the bonds of the Finance Corporation, I do find that its net assets are more than sufficient to enable it to discharge its obligations in the usual course of business, but that this would not be the case if an immediate and enforced liquidation was necessary."

He further found "that there was no fraud on the part of any officer or director of the Guaranty Corporation or of the Finance Corporation in connection with the vote of the stockholders to sell the assets of the Guaranty Corporation to the Finance Corporation, nor was there any actual fraud on the part of any of the officers or directors of either corporation in recommending, and voting for, the sale of the assets of the Guaranty Corporation to the Finance Corporation; that no undue advantage was taken by either corporation or any of the officers, directors or agents of either corporation in connection with the proposed sale or transfer of the assets of the Guaranty Corporation to the Finance Corporation; that the business of the Guaranty Corporation for several years has not been profitable and that its assets have been substantially depleted; that the proposed sale of the assets of the Guaranty Corporation to the Finance Corporation on the basis of an exchange of bonds of the Finance Corporation of the face value of $5.75 for each share of preferred stock of the Guaranty Corporation is, taking into consideration the assets and liabilities and the history of each corporation, fair and

reasonable; that there is no evidence to show that the Finance Corporation or its officers, directors or agents in voting its stock in the Guaranty Corporation in favor of the sale and transfer of the assets of the last-named corporation acted otherwise than in good faith; that the vote above referred to for the sale and transfer of the assets of the Guaranty Corporation to the Finance Corporation is free from unfairness, oppression or fraud." The defendants in their answer admit that the Guaranty Corporation, "if the stock liability is eliminated, is solvent and after paying its debts there would be substantial assets over its liabilities and that the preferred stockholders, in the event of liquidation, would have the right to participate in such assets." They also admit "that there would be a substantial amount over such liabilities with which, in the event of liquidation, it would pay preferred stockholders."

The motion of the plaintiffs to strike out from paragraphs seventeen and twenty-three of the defendant's answer to the Calnan suit as "scandalous, irrelevant and immaterial matters" should have been allowed as to paragraph 17, in so far as the answer in that paragraph purports to assign reasons why the Guaranty Corporation was prompted to sell its assets in 1927 to the Finance Corporation, and alleges "that at the time the suit . . . entitled J. Edward Donahue et als *v.* Guaranty Security Corporation, was brought an attempt was made to procure an injunction to restrain said transfer but that this honorable Court refused said injunction"; and the motion should have been allowed as to paragraph twenty-three in so far as it is therein charged "that the plaintiffs have not brought this bill in good faith but for the purpose of further assisting them in trading and manipulating the securities of the Finance Corporation and the Guaranty Security Corporation and to delay, hinder and depress the business of the Guaranty Security Corporation and for the purpose of forcing upon the officers and directors of the Finance Corporation of New England and Guaranty Security Corporation terms for the acquisition of the shares of stock held by them greatly in excess of their real value." The motives of the plaintiffs which prompted the bringing

of these suits are immaterial. *Colman* v. *Eastern Counties Railway*, 10 Beav. 1, cited in *Richardson* v. *Clinton Wall Trunk Manuf. Co.* 181 Mass. 580, 582. We shall therefore consider these suits without regard to the deleted parts of the answers.

Paragraph eighteen of the bill of Anna M. Hermanns et al. is as follows: "And the plaintiffs further say that the bonds of the Finance Corporation of New England are of doubtful value and have no ready market." To this charge the defendants answered, "The respondents neither admit nor deny the allegations in paragraph No. 18 and call upon the plaintiffs to prove the same." Because this commonly used form of answer does not specifically admit, deny or explain the charge "that the bonds of the Finance Corporation of New England are of doubtful value and have no ready market," the plaintiffs contend that under Equity Rules 6 and 23 (1926), the defendants admit that the bonds which are being offered to the preferred stockholders "are of doubtful value and have no ready market." This contention is sound. *Burke* v. *McLaughlin*, 246 Mass. 533. *Volpe* v. *Sensatini*, 249 Mass. 132, 133. *Piper* v. *C. L. Hayden Co.* 254 Mass. 317, 319. *Hass* v. *United States*, 17 Fed. Rep. (2d) 894.

We put to one side the question whether the admitted facts are material or as evidence have any probative value in support of the relief sought by the bill. The defendant through its failure to answer paragraph sixteen of the Calnan bill admits "that the Guaranty Security Corporation for several years has not paid any dividends to its preferred stockholders although . . . the Guaranty Security Corporation has earned sufficient profits to pay a dividend, and if properly managed, could consistently pay dividends." The findings of the trial judge, that the business of the Guaranty Corporation for several years has not been profitable and that its assets have been substantially depleted, are disregarded by this court in so far as they are inconsistent with the facts charged in said paragraph sixteen and admitted by the failure of the defendant in any manner to answer them. *Snowling* v.

*Plummer Granite Co.* 108 Mass. 100, 101. *Boston Box Co. Inc.* v. *Shapiro,* 249 Mass. 373, 377. See cases collected in 38 Cyc. 1973.

The contention of the plaintiffs as charged in paragraph seventeen of the Anna M. Hermanns bill, that the Guaranty Corporation is solvent, is sound. The defendants admit and the presiding judge found that the Guaranty Corporation is solvent if the stock liability is eliminated. At common law insolvency means inability to pay debts in the usual course of trade. *Coleman* v. *New York, New Haven, & Hartford Railroad,* 215 Mass. 45, 49. The sufficiency of its assets and the ability of the corporation to pay its stockholders the par value of its stock in addition to the debts of the corporation are irrelevant to the issue of insolvency. *Ratcliff* v. *Clendenin,* 232 Fed. Rep. 61. *Hamilton* v. *Menominee Falls Quarry Co.* 106 Wis. 352, 359.

Assuming the facts found by the trial judge, with the limitation put on them, *supra,* and the facts admitted or deemed to be admitted by the defendants, the plaintiffs contend that the vote of the stockholders of the Guaranty Corporation to sell its assets to the Finance Corporation was as matter of law invalid because at common law, as the plaintiffs contend that law to be, a majority of stockholders, however great, of a solvent business corporation cannot sell out the corporation assets against the objection of preferred stockholders who have no vote or against the dissent of a single common stockholder who has a vote and exercises his right to vote. This position of the plaintiffs is supported in many jurisdictions and rests upon the principle that the exercise of such power would defeat the implied contract among the stockholders to pursue the purpose for which the corporation was chartered. This rule where it obtains is subject, however, to the exception that "when, from any cause, the business of a corporation, not charged with duties to the public, has proved so unprofitable that there is no reasonable prospect of conducting the business in the future without loss, or when the corporation has not, and cannot obtain, the money necessary to pay its debts and to continue the business for which it was

organized, even though it may not be insolvent in the commercial sense, the owners of a majority of the capital stock, in their judgment and discretion exercised in good faith, may authorize the sale of all of the property of the company for an adequate consideration, and distribute among the stockholders what remains of the proceeds after the payment of its debts, even over the objection of the owners of the minority of such stock. 3 Thompson on Corporations (2nd ed.), §§ 2424–2429; Noyes on Intercorporate Relations, § 111; 3 Cook on Corporations (7th ed.), § 670, p. 2170, note." *Geddes* v. *Anaconda Copper Mining Co.* 254 U. S. 590, 596.

The plaintiffs further contend that, if a sale of all the property of the Guaranty Corporation to the Finance Corporation could be authorized by the owners of less than all of the stock for an adequate consideration, it must be for money only, for the reason that the minority stockholders may not lawfully be compelled to accept a change of investment made for them by others or to elect between losing their interests and entering a new company; and "if the Guaranty Security Corporation is allowed to sell its assets to the Finance Corporation of New England then the plaintiff stockholders should be held to be entitled to the fair asset value of their stock in cash." Whatever may be the common law in other jurisdictions in regard to the plaintiffs' contention as to solvent corporations, see *Stebbins* v. *Michigan Wheelbarrow & Truck Co.* 212 Fed. Rep. 19, *Byrne* v. *Schuyler Electric Manuf. Co.* 65 Conn. 336, *Kean* v. *Johnson*, 1 Stock. 401, *American Seating Co.* v. *Bullard*, 290 Fed. Rep. 896, 900, it is settled in this jurisdiction by the cases of *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393, *O'Brien* v. *O'Brien*, 246 Mass. 411, 420, and *Abbot* v. *Waltham Watch Co.* 260 Mass. 81, 93, that the owners of a majority of stock of a trading corporation may authorize the sale of all of the property of the corporation when in the exercise of good faith and sound discretion they deem that the further prosecution of the business would be impracticable for any cause even though the corporation may not be insolvent in a technical sense. *Treadwell* v.

*Salisbury Manuf. Co. supra,* is also authority for the position that in the absence of fraud or collusion such a transaction would not necessarily ·be illegal if the Guaranty Corporation received in payment or exchange for its assets, in lieu of money, stock or bonds of the Finance Corporation, to be distributed among those stockholders who are willing to receive them, or to be converted into money and paid to the stockholders who do not desire the stock or bonds. *Opinion of the Justices,* 261 Mass. 556, 597, 601. However the common law may be, the action of the majority of the stockholders, above described, without fraud and in good faith had the sanction of G. L. c. 156, § 42 which reads: "Every corporation may, at a meeting duly called for the purpose, by vote of two thirds of each class of stock outstanding and entitled to vote, or by a larger vote if the agreement of association or act of incorporation so requires, change its corporate name, the nature of its business, the classes of its capital stock subsequently to be issued and their preferences and voting power, or make any other lawful amendment or alteration in its agreement of association or articles of organization, or in the corresponding provisions of its act of incorporation, or authorize the sale, lease or exchange of all its property and assets, including its good will, upon such terms and conditions as it deems expedient."

On the facts found there is nothing to justify the contention of the plaintiffs that the contract of sale between the Guaranty Corporation and the Finance Corporation was voidable because of the fact that the board of directors or a majority of the board of directors are common to both seller and purchaser. *United States Steel Corp.* v. *Hodge,* 19 Dick. (N. J.) 807. *Du Pont* v. *Du Pont,* 256 Fed. Rep. 129.

*Decrees affirmed with costs.*