CRIMMINS & PEIRCE Co. & others vs. THE KIDDER PEABODY
ACCEPTANCE CORPORATION & others.

Suffolk. March 8, 1932. — March 30, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*Corporation*, Rights of stockholders, Classes of stock. *Equity Pleading
and Practice*, Hearing on bill and answer. *Contract*, What consti-
tutes, Validity, Construction.

Where a suit in equity is reserved for determination by this court upon
the bill of complaint and the answer, the facts alleged in the bill
and not denied in the answer and all additional facts well pleaded in
the answer must be accepted as true.
By the provisions of the agreement of association and articles of organ-
ization, subject to which a certain corporation came into existence,
four classes of stock with par value of $100 per share were established
and denominated class A preferred, class B preferred, second preferred
and common. The common stock alone had voting power except
that in certain conditions holders of the class A stock and the class B
stock might vote. The holders of both class A stock and class B stock
were entitled to preferential cumulative dividends; and, upon dis-
solution of the corporation, holders of both classes of stock were
entitled to be paid in full without distinction. There was a provision
that the whole or any part of class A stock or of class B stock might
be redeemed by vote of the directors at par plus accrued and un-
paid dividends, and, immediately after such provision, the following:
"The Class B preferred stock may also, at the option of the holder,
be retired at the said redemption price under such conditions as the
Board of Directors may prescribe at the time or times of issue, but
upon not less than eighteen (18) months' notice thereof." There was
no provision as to the source from which the funds should be derived
to redeem the class B stock when demanded by the holders. Holders
of over half of the shares of class B stock duly notified the corporation
that they desired to have their stock retired at the specified redemption
price and the directors stated that they intended to comply with the
demand. Holders of class A stock sought to enjoin such redemption
in a suit in equity against the corporation, its directors and the holders
of class B stock. The suit was reserved for determination by this
court upon the bill and answers, from which it appeared that divi-
dends due upon the several classes of preferred stock had not been
paid for the two dividend periods next prior to the filing of the bill,
and that the redemption proposed would further seriously impair
the capital of the corporation and would leave a surplus in the assets

of the corporation considerably less in amount than the par value of the class A stock; but it did not appear that the corporation thereby would be rendered insolvent, or that any injury to its creditors had arisen or was threatened, or that it would not be left with sufficient assets to continue in business, or that there had been fraud, bad faith, or breach of trust on the part of any of the defendants. It further appeared that the class A stock had been issued at the organization of the corporation in exchange for a transfer of all the assets of a preëxisting corporation subject to its liabilities and had been distributed to the former corporation's stockholders in liquidation thereof; and that the class B stock had been sold for cash at not less than par after the distributing of a circular letter of which the holders of class A stock had full knowledge. *Held,* that

(1) The preferences given to the class B stock and the class A stock were well within the terms of enabling statutes;

(2) The rights established with respect to the different classes of stockholders among themselves and between the stockholders and the corporation were contractual;

(3) There was no implied qualification of the right of holders of class B stock to redeem their stock to the effect that the capital structure of the corporation should remain proportionately equal as between class B stock and class A stock;

(4) There was no implied restriction upon such right of redemption to the effect that it should not be permissible if the net assets thereby would be reduced to an amount less than the aggregate amount payable to holders of other classes of stock having equal claim to assets upon dissolution or liquidation of the corporation;

(5) The history of the organization of the corporation in the circumstances disclosed had a bearing upon the question of implied limitations to be read into the agreement of association and the articles of organization establishing the relative rights of holders of different classes of stock;

(6) No reason appeared why the rights of retirement and redemption given the holders of class B stock should not be recognized;

(7) The bill was ordered dismissed.

In general and unless restrained by valid statutes, competent persons have the utmost liberty of making contracts; and an agreement voluntarily made between such persons is to be held sacred and enforced by the courts, and is not lightly to be set aside on the ground of public policy or because as events have turned out it may be unfortunate for one party. Per RUGG, C.J.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on October 30, 1931, and on January 5, 1932, amended by the filing of a substituted bill, described in the opinion.

Material facts appearing in the pleadings are described in the opinion.

The suit was reserved by *Sanderson, J.*, upon the bill and answers for determination by the full court.

The case was argued at the bar in March, 1932, before *Rugg*, C.J., *Crosby, Wait,* & *Sanderson*, JJ., and, after the death of *Sanderson, J.*, was submitted on briefs to all the Justices except *Field, J.*

*R. G. Dodge* & *H. S. Davis*, for the plaintiffs.

*T. Hunt*, for The Kidder Peabody Acceptance Corporation and others.

*J. Noble*, (*W. J. Kelleher* with him,) for other defendants.

*S. R. Jones*, for the defendant Stearns.

*G. P. Drury*, for the defendant G. P. Drury, executor.

*G. R. Stobbs, H. H. Hartwell* & *L. E. Stockwell*, for George Crompton, Jr., and others, submitted a brief.

RUGG, C.J. This suit in equity has been reserved for determination by this court upon the substitute bill of complaint and the answers, including the special matter embodied in the answers in the nature of demurrer. The case will be considered on its merits and it is unnecessary to discuss the demurrer, since in any event the ultimate decision must be adverse to the plaintiffs. *Commonwealth* v. *McNary*, 246 Mass. 46, 48. In these circumstances, the facts alleged in the bill and not denied in the answers and all additional facts well pleaded in the answers must be accepted as true. *Joslin* v. *Boston & Maine Railroad*, 274 Mass. 551, 552, and cases collected. *Willson* v. *Laconia Car Co.* 275 Mass. 435, 436. *Boston* v. *Curley*, 276 Mass. 549, 555.

The suit is brought by certain holders of class A preferred stock of The Kidder Peabody Acceptance Corporation against that corporation, its directors, and certain holders of its class B preferred stock alleged to be representative of such holders, they being so numerous that it is not practicable to join all of them as defendants. *Wilkinson* v. *Stitt*, 175 Mass. 581, 584. *Pickett* v. *Walsh*, 192 Mass. 572, 590. The object of the suit is to restrain the defendants from redeeming shares of class B preferred stock.

The material facts are these: The several plaintiffs are holders of a substantial number of shares of class A preferred stock in the corporation. The corporation is

organized under the laws of this Commonwealth; it has outstanding capital stock of the par value of $13,500,000, divided into shares of the par value of $100 each and classified as follows:

Class A preferred (including 1,726 shares in
    the treasury) . . . . . . . 60,000 shares
Class B preferred (including 251 shares in the
    treasury) . . . . . . . . 40,000 shares
Second preferred . . . . . . 30,000 shares
Common . . . . . . . . 5,000 shares

The rights of the respective classes of stock are defined in the agreement of association and articles of organization of the corporation in substance as follows:

*Dividends*: Class A preferred stock and class B preferred stock are entitled out of net profits to preferential cumulative dividends payable semiannually, class A at the rate of five per cent and no more per annum and class B at such rate as shall be fixed by the board of directors at the time of its issuance. Second preferred stock is entitled to preferential cumulative dividends at the rate of six per cent payable out of net profits, strictly subject, however, to all prior dividend rights of class A preferred stock and class B preferred stock. No dividends can be paid upon common stock until all dividends due on class A, class B, and second preferred stock have been paid.

At the time of the issue of class B preferred stock, the directors fixed six per cent per annum as its rate of dividend.

*Liquidation or Dissolution Rights*: In case of liquidation or dissolution, the holders of class A preferred stock and class B preferred stock shall be paid in full without distinction. Subject to this preference, holders of the second preferred stock shall be paid. The remaining proceeds of liquidation shall be paid to holders of common stock.

*Redemption Rights*: "The whole or any part of the Class A preferred stock and the whole or any part of the Class B preferred stock may be redeemed at the option of the

Board of Directors on any semi-annual dividend date upon thirty (30) days' notice by the payment therefor of the par value plus accrued and unpaid dividends to date of redemption . . . . The Class B preferred stock may also, at the option of the holder, be retired at the said redemption price under such conditions as the Board of Directors may prescribe at the time or times of issue, but upon not less than eighteen (18) months' notice thereof. The whole or any part of the Second preferred stock may be redeemed at the option of the Board of Directors on any semi-annual dividend date upon thirty (30) days' notice by the payment therefor of the par value thereof and twelve and one-half per cent. (12½%) premium ($112.50 per share) plus accrued and unpaid dividends at the 6% rate to date of redemption . . . ."

No conditions respecting the retirement of class B preferred stock at the option of the holder have been prescribed by the directors except that, prior to offering it for sale, they determined that any such retirement should take place on a dividend date and that a person desiring to exercise the privilege of having his stock retired must give a notice in writing of at least eighteen months.

The voting rights are vested exclusively in holders of the common stock, except that in certain conditions not material to any issue here raised holders of class A preferred stock and class B preferred stock may vote.

There is a further provision that class B preferred stock shall be reserved for sale for cash at not less than par, but must first be offered *pro rata* to class A preferred stockholders.

The corporation was organized to take over the business and assets of a preëxisting corporation as a going concern. It issued the sixty thousand shares of its class A preferred stock to that preëxisting corporation in exchange for all its assets subject to its liabilities. That preëxisting corporation distributed this class A preferred stock to its own stockholders in liquidation, each receiving one share of such stock for each share of the old stock held by him. Previous to this exchange the directors of that corporation

sent a circular letter to its stockholders outlining a plan for the organization of a new corporation describing class A preferred stock as stock to be issued in exchange for old stock or in payment for its assets, and class B preferred stock as stock to be reserved for sale for cash at not less than par on a parity as to security with class A preferred stock, "except that it will be redeemable by the Company or at the option of the holder, at par and accrued dividends." The directors of the defendant corporation sent a circular letter to all stockholders in 1922 announcing their vote to issue 24,000 shares of class B preferred stock, which among other matters recited in substance the provision that such shares of stock might at the option of the holder be retired upon any dividend date at the price of par plus accrued and unpaid dividends upon required notice in writing. Pursuant to this vote 21,250 shares of such stock were issued for cash at par and the balance outstanding at later dates upon the same conditions. The plaintiffs contend that the circumstances of the issuance of the stock are not well pleaded. These facts are regarded as showing the emphasis at all material times placed upon the preferences established for class B preferred stock over class A preferred stock. To that extent they are not impertinent to the issues here raised, because they show that the provisions as to preference were set before the holders both of class A preferred stock and of class B preferred stock.

The respective dividends due upon the several classes of preferred stock have not been paid for the two dividend periods next prior to the filing of the bill; total dividends approximating $720,000 were then in arrears.

The holders of 22,927 shares of class B preferred stock have in accordance with the above provisions notified the corporation that they desire to have their stock retired at par plus accrued and unpaid dividends. It is probable that the holders of additional shares of such stock will give similar notices in the near future. The defendants who are directors of the corporation have announced their intention of complying with these several notices and of redeeming such shares.

The corporation has largely discontinued its acceptance business, although that has never constituted its principal activity, and there has been no change in the nature of the business which it is authorized to do. Its financial report shows that on July 15, 1931, its assets were $10,440,908.88, its liabilities (exclusive of capital stock) $2,836,439.41, leaving as surplus $7,604,469.47, and that on November 14, 1931, the same items were assets $7,974,501.36, liabilities $222,408.74, surplus $7,752,092.62. In each instance certain contingent liabilities and the capital stock are omitted. The par value of the outstanding capital stock, after deducting that in the treasury, is as follows: class A preferred, $5,896,600; class B preferred, $3,996,700; second preferred, $3,000,000; common, $500,000.

There are no allegations to the effect that compliance by the corporation with the asserted rights of the holders of class B preferred stock for retirement of their stock at the redemption price of par value plus accrued and unpaid dividends will work wrong to any one except to holders of class A preferred stock. No question arises as to proposed liquidation of the corporation. The utmost extent of the allegations in this particular is that, if the redemption of class B preferred stock in accordance with the notices demanding its retirement takes place, "the result as against the plaintiffs and all other holders of class A preferred stock will be that the serious impairment of capital already existing will be greatly aggravated."

The prayer is "that the corporation and the individual defendants be restrained from redeeming any shares of class B preferred stock until such time as this can be done without impairment of capital as against holders of class A preferred stock."

It is apparent from the figures recited, that redemption of all or a large part of class B preferred stock as demanded would leave a surplus in the assets of the corporation considerably less than the par value of class A preferred stock but intrinsically large in amount. There are no allegations to the effect that such amount will not be sufficient to permit the corporation to continue its business.

The bill is brought by certain holders of class A preferred stock in their own names, in their own right, and for their own interests, and not for the benefit of any one else. There are no allegations that the corporation is insolvent, that any injury to its creditors has arisen or is threatened, or that there has been fraud, bad faith, or breach of trust on the part of any of the defendants. There are no allegations that the retirement and redemption of class B preferred stock will disable the corporation from performing its corporate functions although the inference is permissible that its business activities may not be so extensive as they might be with full capital resources. Relief is sought by the plaintiffs as stockholders of one class to restrain stockholders of another class in the same corporation from enforcing their asserted rights. The holders neither of class A preferred stock nor of class B preferred stock have any voice in the management of the corporation or the selection of its directors or officers, that being vested on the facts here disclosed entirely in the holders of common stock.

The controversy and the questions to be decided relate exclusively to rights with respect to each other of holders of class A preferred stock and holders of class B preferred stock. In the absence of some special provision to the contrary, no distribution of assets can be made to some stockholders in preference to others. *Continental Ins. Co.* v. *United States,* 259 U. S. 156, 181. Preferences between different classes of stock in domestic corporations are recognized by statute as part of the established policy of the Commonwealth. Every business corporation is authorized to create two or more classes of stock with such preferences, voting powers, restrictions and qualifications thereof as shall be fixed in its agreement of association or articles of organization. G. L. (Ter. Ed.) c. 155, §§ 18, 19; c. 156, § 14. In view of this provision, it cannot well be contended that the preferences here established are in themselves illegal. They are within the terms of the enabling statutes.

The inquiry comes, therefore, to the interpretation as applied to these facts of this sentence in the agreement of association: "The Class B preferred stock may also, at

the option of the holder, be retired at the said redemption price under such conditions as the Board of Directors may prescribe at the time or times of issue, but upon not less than eighteen (18) months' notice thereof."

It is manifest that these words were intended to have some meaning. They occur in the agreement for association subject to which the corporation came into existence. They constitute a part of the contract by which holders of class A preferred stock and of class B preferred stock became stockholders in the corporation. The rights thereby established with respect to the stockholders as among themselves and between the stockholders and the corporation are contractual. *Page* v. *Whittenton Manuf. Co.* 211 Mass. 424, 427. *Thomas* v. *Laconia Car Co.* 251 Mass. 529, 533. *Albert E. Touchet, Inc.* v. *Touchet,* 264 Mass. 499, 510. *Joslin* v. *Boston & Maine Railroad,* 274 Mass. 551, 555.

It is to be presumed that parties employ all the provisions and phrases of a written contract with the purpose that each has an appropriate meaning. In interpreting contracts every word is to be given force so far as practicable. *Bray* v. *Hickman,* 263 Mass. 409, 414. *Maksymiuk* v. *Puceta,* 279 Mass. 346, 353. All parts of an agreement are to be construed together as constituting a single and consistent arrangement. The intent of the parties must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part. The preferences of class B preferred stock over class A preferred stock are that the former is entitled to cumulative dividends at the rate of six per cent and may be redeemed at par at the option of the holder, while class A preferred stock is entitled to cumulative dividends at the rate of five per cent. The particular preference accorded to class B preferred stock and here to be construed follows a sentence establishing preferences where class A preferred stock and class B preferred stock are on an equality. It is accompanied by the word "also," which denotes a new, distinct, and additional matter. *Twiss* v. *Simpson,* 183 Mass. 212, 215. Otherwise, as to preferences between

each other and over other classes of stock, they are on an equality. There is no provision as to the source from which the funds shall be derived to redeem the class B preferred stock when demanded by the holders. Therefore, the price of such redemption is payable from any available funds of the corporation. The case at bar is distinguishable from *Miller* v. *M. E. Smith Building Co.* 118 Neb. 5, where the contract was interpreted to mean that the redemption must be made solely out of earnings of the corporation and there were no earnings. These provisions as to preference were doubtless on the certificates of stock in conformity to G. L. (Ter. Ed.) c. 155, §§ 18, 19. The plaintiffs were in any event presumed to know of the provision. *Richardson* v. *Devine*, 193 Mass. 336, 338. *New England Trust Co.* v. *Abbott*, 162 Mass. 148, 151. The preference of class B preferred stock over class A preferred stock may well have been an inducement to the investment of cash by purchasers of the former, which could be issued only for cash at not less than par.

Right of redemption has been recognized as a part of a contractual preference in issuing preferred stock. *Davis* v. *Second Universalist Meeting-House*, 8 Met. 321. *Lindsay* v. *Arlington Co-operative Association*, 186 Mass. 371, 374. *Opinion of the Justices*, 261 Mass. 523, 548. *F. T. Gunther Grocery Co.* v. *Hazel*, 179 Ky. 775, 783–784. *Abrahams* v. *Medlicott*, 86 Kans. 106. *Booth* v. *Union Fibre Co.* 142 Minn. 127. *Butler* v. *Beach*, 82 Conn. 417, 421. *Westerfield-Bonte Co.* v. *Burnett*, 176 Ky. 188. In principle it is analogous to purchase by a corporation of its own stock, which commonly is valid. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102, 110. *Barrett* v. *W. A. Webster Lumber Co.* 275 Mass. 302, 307, and cases cited.

It has been held that such contracts for redemption of stock are subject to the implied limitation that they cannot be enforced if the effect is to render the corporation insolvent, or if there are other express limitations upon the right. *Booth* v. *Union Fibre Co.* 142 Minn. 127. *Warren* v. *Queen & Co.* 240 Penn. St. 154. *Koeppler* v. *Crocker Chair Co.* 200 Wis. 476, 481–482. *In re Hicks-Fuller Co.*

9 Fed. Rep. (2d) 492. *Spencer* v. *Smith,* 201 Fed. Rep. 647. See *Cunningham* v. *Commissioner of Banks,* 249 Mass. 401, 432. There is no allegation to indicate insolvency of the corporation, or that the redemption of the stock as requested will make it insolvent.

In determining whether a corporation is insolvent, liability to stockholders on capital stock is not taken into account. *Calnan* v. *Guaranty Security Corp.* 271 Mass. 533, 542.

Contingent liability of the corporation does not indicate insolvency on this record. There is no allegation as to the insolvency of the principal on such contingent liabilities. The corporation may never be required to meet any part of them. *In re Bowers,* 215 Fed. Rep. 617.

The main contention of the plaintiffs is that it is an implied condition of the issuance of the classes of stock that there shall be no redemption of class B preferred stock which will leave the corporation in such condition that class A preferred stock will not be worth par, or will be so reduced in value as the present record would indicate. Stated in different form the contention is that the structure of the corporation is built upon the theory of substantial equality between these two classes of stock. That contention cannot be supported. It would wipe out the very preference which is established by the plain words of the agreement of association. That preference, interpreted according to the natural signification of its words, would give the class B preferred stock a genuine increment of value to a prudent investor. There is no implied qualification to the right of holders of class B preferred stock to redeem their stock to the effect that the capital structure of the corporation shall remain proportionately equal as between class B preferred stock and class A preferred stock. There is no implied restriction to the effect that such redemption shall not be permissible if the net assets would be reduced to an amount less than the aggregate amount payable to holders of other classes of stock having equal claim to assets upon dissolution or liquidation of the corporation. Such implied limitation, qualification or restriction as that

for which the plaintiffs contend cannot be read into the agreement establishing the respective rights of these two classes of stock without creating a new and different contract from that made by the parties. "The court cannot make a different contract from that which the parties made for themselves." *Carnegie Steel Co.* v. *United States,* 240 U. S. 156, 164. *Day* v. *United States,* 245 U. S. 159, 161. If it had been the intention of those framing the articles of agreement upon which the corporation came into existence to limit this preference of class B preferred stock for the benefit of class A preferred stock, it would have been a simple matter so to state in the articles of agreement. It would have been easy to say that such preference should not be construed ever to impair the par value of class A preferred stock. Omission of any such statement is strong proof that no implied limitations such as here are urged by the plaintiffs were designed. Provisions of that nature are sometimes found in statutes. See Cal. Civ. Code (1931) § 347. There is no provision of similar nature in our statutes. G. L. (Ter. Ed.) c. 155, §§ 18, 19; c. 156, § 14. A guaranty of dividends on preferred stock without limitation has been held to be absolute and not conditional upon the earning of profits available to that end. *Williams* v. *Parker,* 136 Mass. 204. See *Field* v. *Lamson & Goodnow Manuf. Co.* 162 Mass. 388.

Enforcement of the agreement may now seem hard to the plaintiffs. But they entered into it without compulsion and of their own choice. Its terms are plain.

The circumstances as to the issuance of the several classes of stock as set forth in the answers of some of the defendants are well pleaded. The history of the organization of the corporation in the circumstances here disclosed has a bearing upon the question of implied limitations to be read into the articles of agreement establishing the relative rights of holders of different classes of stock. *New York Trust Co.* v. *Portland Railway,* 197 App. Div. (N. Y.) 422. Class A preferred stock was issued originally in payment for the assets of a preëxisting corporation. As to their value, there could hardly be exactness of determina-

tion because it would naturally rest upon opinion honestly made as basis of transfer. *H. B. Humphrey Co.* v. *Pollack Roller Runner Sled Co. Inc.* 278 Mass. 350, 353. Class B preferred stock was issued only for cash at not less than par. A preference in favor of those putting cash into an established business violates no principle of fair dealing provided all parties in interest know about it. There appears to have been careful effort to bring the preference established by the quoted sentence to the knowledge of all holders of class A preferred stock, who were given preferential rights to subscribe for class B preferred stock, as well as to other subscribers for the latter stock. The preference was regarded as of sufficient importance to be given emphasis. It is fairly inferable that some special inducement was thought to be necessary to stimulate the investment of cash in the corporation in return for purchase of class B preferred stock. There appears to be no reason why that inducement should not be effectuated according to its terms. It formed a part of the contract on which subscriptions to that class of stock were made.

In general and unless restrained by valid statutes, competent persons have the utmost liberty of making contracts. Agreements voluntarily made between such persons are to be held sacred and enforced by the courts, and are not to be lightly set aside on the ground of public policy or because as events have turned it may be unfortunate for one party. *Kaplan* v. *Suher,* 254 Mass. 180, 185. *Printing & Numerical Registering Co.* v. *Sampson,* L. R. 19 Eq. 462, 465. *Baltimore & Ohio Southwestern Railway* v. *Voigt,* 176 U. S. 498, 505. *Twin City Pipe Line Co.* v. *Harding Glass Co.* 283 U. S. 353, 356. *Advance-Rumely Thresher Co. Inc.* v. *Jackson,* 287 U. S. 283, 288. That principle is applicable to the facts here disclosed.

The result is that upon the facts appearing in this record the plaintiffs are not entitled to prevail. A decree is to be entered dismissing the bill with costs.

*Ordered accordingly.*