**WILDERMUTH et v LORAIN COAL & DOCK CO.**

Ohio Appeals, 2nd Dist, Franklin Co

No 3133. Decided April 24, 1940

**320**

Roy L. Wildermuth, Columbus, for plaintiffs-appellants.

Hedges, Hoover & Tingley, Columbus, for defendants-appellees.

## OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

Plaintiffs set forth in their petition the essential facts upon which is predicated the following prayer:

"Wherefore plaintiffs pray that this court proceed to determine in the manner specified in §8623-72 GC, the fair cash value, as of September. 28, 1939, of the 101 shares of preferred stock owned by plaintiff Roy L. Wildermuth, and the 996.8 shares of preferred stock owned by plaintiff Goldie J. Wildermuth; that the court determine the fair cash value of the preferred stock owned by Roy L. Wildermuth including the unpaid accumulated dividends thereon, as of said date to be $16,770.55, and that of the preferred stock owned by Goldie J. Wildermuth including the unpaid accumulated dividends thereon, as of said date to be $164,172.96; that the court render judgment for said amounts or whatever fair cash value shall be so fixed and determined, with interest from September 28, 1939; that the costs of this proceeding be taxed against the defendant company; and for such other and further relief as plaintiffs may be entitled to."

The defendant answered at length, admitting the greater part of plaintiffs' petition and denying each and every allegation not specifically admitted to be true.

The answer denied that plaintiffs were entitled to object to the action of the preferred shareholders, taken on the 29th day of September, 1939, amending the Article of Incorporation for the reason that said plaintiffs, as holders of said preferred shares, were not substantially prejudiced by said amendment and hence were not entitled to demand the fair cash value of their shares. The answer further alleges that the amendments to the Articles of Incorporation were adopted by the shareholders of said corporation as a part of the general plan to borrow money for the purpose of providing necessary capital with which to operate the business of the defendant and to provide funds with which to mechanize certain of its mines, and that if the defendant company is to survive and continue said business it will be necessary to so mechanize, and that the action of said shareholders in voting to adopt said amendment was not detrimental to but was beneficial to the holders of said preferred shares and to the value of said shares.

The second defense seeks to raise the issue that if plaintiffs are permitted to maintain their action and the court ultimately determine the fair cash value of said shares and orders the same paid by the corporation, the de-.

fendant would be unable to meet its obligations as and when same would mature, and would be disabled from performing its corporate functions, all to the detriment of the defendant, its creditors and preferred shareholders, and that as a result thereof the status of the plaintiffs would be changed from that of holders of preferred shares to that of creditors, and they would be preferred over the other preferred shareholders to the detriment of creditors of said defendant and the holders of its preferred shares, and all claimed to be contrary to the purpose and intent of §8623-72 GC.

The third defense questions the constitutionality of §8623-72 GC, claiming that it is in violation and a contravention of Secs. 1 and 16 of Art. I of the Constitution of the State of Ohio and the 14th Amendment of the Constitution of the United States.

Plaintiffs' reply makes specific admissions of a number of the averments of the first defense of defendant's answer, and then winds up with a general denial of all other averments.

When the case came on for hearing, plaintiffs moved the court for judgment on the pleadings, which was overruled, and the plaintiffs not desiring to introduce any evidence, defendants interposed motion to dismiss plaintiffs' petition for failure of proof, which latter motion was sustained. Thereafter motion for new trial was filed, overruled and final judgment entered.

A bill of exceptions was duly filed, and with one exception it contains nothing of an evidentiary character. In the main it consists of colloquy between counsel for the plaintiffs and the court, following plaintiffs' motion for judgment on the pleadings. Occasionally counsel for defendant inject some remarks, but all of an argumentative character. Very early in the colloquy the court advised counsel that in its judgment the question as to whether or not plaintiffs were "substantially prejudiced" by the amendment to the Articles of Incorporation was a factual question requiring the presentation of evidence, and under the state of the

pleadings could not be determined as a matter of law.

Both counsel and the court stood by their repective positions, with the result that plaintiffs' petition was dismissed, as heretofore stated.

Under the new Corporation Code, enacted in 1931, pronounced changes were made as to the right of amendment of the Articles of Incorporation, and remedies also provided to minority stockholders.

Sec. 8623-14 GC, authorized the amendment to charter while §8623-72 provides a remedy to the dissenting shareholders. The pertinent part of §8623-14 GC, reads as follows:

"8623-14. Amendment to articles. A corporation for profit organized under the provisions of this act or of any previous corporation act of this state may alter or add to its articles or change issued shares in any respect by the adoption of an amendment in the manner hereinafter provided in this act; provided, that its articles as amended will contain all provisions required in original articles, and will contain only such provisions as might be contained in original articles if filed at the time of making such amendment, and, if a change in issued shares is to be made, such provisions as are required to be included therein by subdivisions (5) or (6) of §8623-15 GC; and provided further in the event that

(1) an amendment is adopted which changes issued shares of a particular class having preference in dividends or liquidation over any other class of shares into shares of any other class or classes, or changes any or all of the express terms and provisions of issued shares of such particular class, and the holders of the shares of such particular class are substantially prejudiced thereby, and the articles do not expressly or by implication provide for or permit such amendment, or

(2) an amendment is adopted which changes the express terms and provisions of issued shares of a particular class having preference in dividends or liquidation over any other class of

322

shares in such manner as to discharge (without payment), adjust or eliminate rights to accrued undeclared cumulative dividends on any such class, or

(3) an amendment is adopted which substantially changes the purposes of the corporation, **and the corporation in its original articles has not reserved the right to make such change,** then in events (1) or (2) above, dissenting shareholders of the particular class therein described, and in event (3) above dissenting shareholders of any class, shall be entitled to relief under the conditions, in the manner and to the extent provided in §8623-72 GC.

In particular, without prejudice to the generality of such power of amendment, a corporation by the adoption of an amendment may:

(a) * * * * *
(b) * * * * *
(c) * * * * *
(d) * * * * *
(e) * * * * *
(f) * * * * *
(g) * * * * *

(h) authorize the board of directors, subject to such limitations, if any, as may be stated in the amendment, to adopt amendments to the articles, in respect to any unissued or treasury shares of any class, to fix or alter the division of such shares into series, the designation and number of shares of each series, the dividend date, dates of payment of dividends and dates from which they are cumulative, redemption rights and price, liquidation price, sinking fund requirements, conversion rights and restrictions on issuance of shares of the same series or of any other class or series;

(i) change any and all of the express terms and provisions or designations of issued or unissued shares of any class or series; which change, if desired, may include: the discharge, adjustment or elimination of rights to accrued undeclared cumulative dividends on any such class;

(j) change any provision of the articles which was included or add any provision proper to be included therein.

If any change of issued shares would require a reduction of the stated capital of the corporation, then, in addition to such amendment, the corporation shall take proceedings in conformity with this act to authorize and effect such reduction." (Emphasis ours).

Sec. 8623-15 GC, sets out the procedure which is to be followed in making amendments.

The pertinent portion of §8623-72 GC, reads as follows:

"Unless the articles otherwise provide, any dissenting shareholder, who shall not have voted in favor of the proposals herein mentioned and by the provision of any section of this act, is entitled to relief when the articles of the corporation have been amended, * * * shall be paid the fair cash value of his shares as of the day before the vote was taken authorizing any such action, excluding from such fair cash value any appreciation or depreciation in consequence of the consolidation or other matters which entitled him to such relief, if such shareholder within twenty days after the day on which the vote was taken, shall object in writing to the action so taken and shall demand in writing the payment of such fair cash value of his shares. Such payment shall be made within thirty days after such fair cash value is agreed upon or determined. * * * Any such objection and demand for the payment of the fair cash value of shares shall state the number and kind of shares held by the dissenting shareholder making the demand, and the amount which such shareholder claims is such fair cash value.

* * * * *

* * * * *

Within ten days after the receipt of any such demand the corporation shall inform such shareholder in writing whether it will pay the demanded amount, and, if it refuses to pay such amount, it shall offer in writing to pay an amount as and for such fair cash value."

Then follows other procedural steps, all of which were observed by both plaintiffs and defendant.

Then continuing, as follows:

"On the day fixed for the hearing of such petition, or any adjournment thereof, the court shall determine from the petition and such evidence as may be submitted by either party **whether the dissenting shareholder is entitled to be paid** the fair cash value of any share or shares, and, if so, the number of such shares, and if the court shall find and order that such share-holder is entitled to be paid the fair cash value of any number of shares, the court shall appoint three appraisers to determine the fair cash value of such number of shares as of a day to be named in such order, which shall be the day before the vote so objected to was taken, and said court shall instruct said appraisers respecting their duties in making such determination." (Emphasis ours).

The following paragraphs of the section deal in much detail with the further procedural steps, culminating in a final determination.

The controverted issues present two questions:

1. Do the facts presented through the pleadings bring plaintiffs within the provisions of §8623-14 GC, wherein it states: "and holders of the shares of such particular class are substantially prejudiced thereby"?

2. By like consideration may it be stated that "the articles do not, expressly or by implication, provide for or permit such amendment"?

We will consider these questions in reverse order.

We have no difficulty in arriving at the conclusion that the burden is upon the plaintiffs to establish that the articles do not expressly or by implication provide for or permit such amendment.

The petition sets out in great detail the provisions of the Articles of Incorporation relative to the controlling fea-tures, of preferred stock, its dividend rights, times of payment, cumulative Provisions, right of redemption at 110, par being 100, the express terms and provisions through which redemption fund was created by the setting aside each year of 8 cents per ton on all coal sold before the payment of any dividends on preferred or common, and in the event the company was unable to pay such 8 cents per ton in any year, that the same should be made up in subsequent years before the payment of any such dividends.

In addition the petition sets out the following:

"That neither in the Articles nor in the provisions of the preferred stock was any right reserved to the defendant company, either expressly or by implication, to amend said paragraph 5 of the Articles or provision 5 of the preferred stock."

We now look to the answer to ascertain if the admissions of the allegation of the petition and other averments are such as to eliminate as an issue that the articles relative to preferred stock reserved to the company the right to amend in the particulars stated.

The answer goes to great length in its admissions of allegations of the petition and in several instances sets out verbatim the provisions of the Articles of Incorporation, whereas the petition only stated the substance. It is true that at the end of some four pages the following averment appears:

"Further answering, the defendant denies each and every other allegation contained in the petition of the plaintiff not hereinbefore specifically admitted to be true."

On page 1 of the answer we find the following:

"Defendant says that Paragraph 1 of the terms and provisions under which the preferred shares were issued and to which they are subject is as follows:".

**324**

Then follows the section as a quotation.

On page 2 of the answer is found the following:

"Defendant says that Paragraph 4 of the terms and provisions under which said preferred share were issued and to which they are subject is as follows:".

Then follows the section as a quotation.

Again, on the same page, we find the following:

"Defendant says that Paragraph 5 of the terms and provisions under which said preferred shares were issued and to which they were subject prior to a meeting of the shareholders held on the 29th day of September, 1939, provided as follows:".

Then follows the section quoted in full.

The answer having set out in such detail the terms and provisions under which the preferred shares were issued and to which they were subject, very clearly indicates that the denial in the answer of all other averments may not be given an inconsistent application so as to present the issue of reserved rights in the articles, to amend.

The Supreme Court, in the case of **Reiff v Mulholland et, 65 Oh St 178**, first syllabus, makes the following pronouncement:

"1. All the allegations of a pleading should be considered in determining the effect of any of them, and a general denial of the allegations of the petition is unavailing if inconsistent with the express admissions of the answer."

Furthermore, a reading of all the pleadings leads to no other conclusion than that the entire proceedings relative to the amendment to the articles were carried on through the provisions of the Code authorizing such amendments, and not through any express provisions contained in the charter.

We determine that under the language of the pleadings no issue was presented on the question of reserved rights in the corporation to amend the Articles in the particulars set out in the pleadings.

This brings us to the remaining question, i. e.: Does it affirmatively appear from the uncontroverted provisions of the pleadings that plaintiffs were substantially prejudiced, as that term is understood under the provisions of §8623-14, GC?

The pertinent provisions of the Article 5 prior to the amendment were as follows:

"5. The company agrees to set aside each year in a special fund for the purpose of redeeming its preferred stock not less than eight cents (8c) per ton on all coal mined by it; said sum so set aside may be invested temporarily in such securities as the board of directors may determine; and said fund shall be used from time to time at such times and in such amounts as the board of directors shall determine, in the redemption of the preferred stock; provided, however, that if in any year, for any cause, the company is unable to set aside in said special fund the full sum of eight cents (8c) per ton, the deficiency shall be made up in the next subsequent years before any dividends are paid on any stock, common or preferred."

The article as amended by the requisite vote of the stockholders was as follows:

"5. Commencing on the first day of May, 1942."

Then follows the remainder of the above-quoted paragraph 5, in the identical language, without alteration or change. following which appears the remainder of the amendment:

"Any deficiency in said special fund existing at the date hereof under this provision of the Articles, as the same

was prior to this amendment, as a result of the failure or inability of the Company to set aside said special fund in respect to all coal mined by it is hereby cancelled and the company relieved from any liability to set aside said fund in respect to all coal mined by it to the date hereof and as to which any deficiency exists, and in respect to all coal mined by it from the date hereof to the first day of May, 1942. All moneys in said special fund as of the 29th day of September, 1939, are hereby released and restored to the general funds of the Company, free from any obligation of the Company to use said moneys for the redemption of its preferred stock."

The amount of money in this special sinking fund prior to the amendment was $7620.00. The amendment was adopted by the following vote:

| | Ayes | Nays | Not Voting |
| --- | --- | --- | --- |
| Common Stock | 51177.2 | 3000.4 | 2600 |
| Preferred Stock | 16834.4 | 1097.8 | 911 |

The deficiency in the special sinking fund for the redemption of preferred stock at the time of the amendment was nearly $1,000,000.00. The estimated deficiency which would accrue between the date of the amendment and May 1, 1942, would be approximately $270,000.00.

The plaintiffs voted against the amendment and the only factual question stipulated in the bill of exceptions was that plaintiffs had at all previous annual meetings voted against the action of the corporation in not setting aside the special sinking fund.

It is the claim of the company that the amendment was in furtherance of the plan to mechanize the mines and the borrowing of $300,000.00 for such purpose.

There was the further averment in the answer that the mechanizing of the mines made possible through the amendment to Article 5 was necessary for the future operation of its mining of coal.

The large majority of the stockholders evidently was in accord with this proposed plan and hence voted for the amendment. The plaintiffs, along with other minority stockholders, voted against the plan.

As we understand the contention of counsel for the corporation, concurred in by the trial court, this presented a factual question which in effect would require the court to determine the wisdom of such change.

We do not think this is the proper construction to be placed on §8623-14 GC, in determining whether the present plaintiffs were "substantially prejudiced" through the amendment. We think it would very generally be true that where the majority stockholders through authorized amendments made substantial changes in the business policy, that they would be able to convince a trial court that the proposed plan would be advantageous to the corporation and to its stockholders, but we must not overlook the rights of minority stockholders when they are not in accord with the proposed change and where such change will alter their existing rights.

Tested by this rule, have the rights of plaintiffs been substantially altered?

The deficiency in the sinking fund of almost $1,000,000.00 had accrued prior to the date of the amendment. This sinking fund was to be set aside in a special fund to be available to retire the preferred stock at 110. Originally Article 5 provided that if for any reason the condition of the company would not permit the 8c per ton placed in this special sinking fund, this amount should be made good in subsequent years before the payment of any dividends on preferred or common stock. Under the amendment this right to have the deficiency made up is lost, and the obligation for the entire amount cancelled. Between the date of the amendment and May 1, 1942, the company may pay a dividend on preferred and common stock, conditioned

only that the profits of the company are sufficient with which to make such payment. Following May 1, 1942, and after the payment of 8c per ton on all coal mined, the company, if profits warrant, could pay dividends on both common and preferred stock. Of course, the preferred stock would have prior rights, and this would probably include defaulted payments of dividends on preferred stock. In the provisions of the Articles the dividends are cumulative. Nevertheless, common stockholders will be advantaged in the future, providing the profits of the company are sufficient to pay the current 8c per ton per year, and dividends to the preferred and common stockholders. By way of example, let us assume that the company under its plan of mechanizing makes a profit in the next one, two or three years, or any number of years, sufficient to pay off the defaulted cumulative dividends on preferred stock, and in 1942 and thereafter pay this 8c per ton on the coal mined, still has adequate profit to pay all preferred dividends and in addition dividends on common. But for the amendment the common stock would not receive any dividends, but the amount would go towards paying the $1,000,000.00 deficiency in the sinking fund.

It is this advantage to the common stockholders which we ██ think presents a substantial prejudice to the plaintiffs as holders of preferred stock.

Our court had under consideration §§8623-14 and 8623-72 GC, in the case of Harbine v Dayton Malleable Iron Company, 61 Oh Ap 1. In this case the corporation by amendment, decreased the dividend per cent on its preferred stock and also attempted to take care of unpaid cumulative dividends by issuing holders of such preferred stock a designated amount of common stock. We held that the corporation had a right under the provisions of the Constitution and the Code to reduce its dividend payments, but we also stated that the minority stockholders not agreeing thereto might un-

der the provisions of §8623-72 GC, have paid to them the value of their preferred stock. In the reported case the plaintiff had not availed himself of the provisions of the above section, but was seeking a remedy through injunction. We held that so far as the reducing of dividends was concerned the remedy under the above section 72, was exclusive. In that case it was urged that the reduction of the dividend payments on preferred stock was necessary in order for the company to continue in business, and the majority of the stockholders concurred in this conclusion. Harbine dissented and had he followed the procedure prescribed under §8623-72 GC, he would have been entitled to recover.

It is our determination that the pleadings in the instant case adequately present a substantial prejudice to plaintiffs, and that the court was in error in dismissing the petition for failure of proof.

The judgment of the trial court is, therefore, reversed, and the cause remanded, with instructions to proceed to have the value of plaintiffs' stock determined, as prescribed under the Code. Also for further proceedings according to law. Costs in this court are adjudged against the defendant.

Exceptions are allowed.

HORNBECK, PJ. & GEIGER, J., concur.

## APPLICATION FOR REHEARING

No 3133. Decided May 23, 1940

BY THE COURT:

The above entitled cause is now being determined on defendants-appellees' motion for rehearing.

There has been some delay in the determination of this application for rehearing due to the fact that the memoranda did not accompany the application and when prepared was filed with the Clerk of Courts rather than mailed to the Judges as provided under

Court Rule XI. As a result we did not receive the memoranda until Monday, May 20th.

For the purpose of being helpful in further litigation in our Court we call attention to the fact that application for rehearing is not provided for under the Code but solely under the Rules of Court. When it is desired to file application for rehearing the memoranda of authorities and argument should be part of the application and all prepared in triplicate and mailed to the Judges at their home addresses.

The application in the instant case presents three specifications which we will take up in the same order.

1. "That the Court erred in holding that under the language of the pleadings no issue was presented on the question of reserved rights in the corporation to amend the articles in the particulars set out in the pleadings."

In the argument we find nothing but what was considered before the original opinion was released.

In this particular we adhere to our former opinion.

2. "That the Court erred in holding that the answer of the Lorain Coal & Dock Company, defendant-appellee, did not constitute a defense to the petion of the plaintiffs-appellants."

Under this specification counsel for appellees again urge the second defense of the answer wherein, in substance, it was averred that if the plaintiffs are permitted to maintain their action and the fair value of their shares be ordered paid by the corporation, the defendant would be unable to meet its obligations and would be disabled from performing its proper functions, all to the detriment of the defendant, its creditors and preferred stockholders. In further support of this second defense of the answer our attention is called to the case of Crimmins v Pierce et al v Kidder, Peabody Acceptance Corporation, et al (Mass.), 185 N. E. 383. The cited case and the instant case are substantially different in their facts. In the instant case the pertinent section of the Code specifically provides the procedure to be followed in the event the corporation desires to carry its proposed amendment into effect. The only alternative would be to abandon its proposed amendment, or comply with the statute. The application for rehearing under specification No. 2 will be overruled.

3. "The Court erred in reversing and remanding this cause to the Court of Common Pleas with instructions to proceed to have the value of the stock of the plaintiffs-appellants determined without permitting the defendant-appellee to introduce testimony in support of the defenses set forth in its answer."

In effect, this third specification is attempting to raise the identical question as presented under the second specification. If the financial status of the defendant company is precarious, such situation would, no doubt, have a very material effect on the value of plaintiffs' stock. If it is shown that the total assets of the corporation would not be sufficient to pay its debts, then it naturally follows that the corporation stock has no value.

Under the provisions of the Code the value is to be determined uninfluenced by the prospective amendment to the articles.

The application for rehearing will be overruled.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.