CASE 84—PETITION EQUITY—FEBRUARY 1.

# American Wire Nail Co. v. Gedge.

### APPEAL FROM KENTON CIRCUIT COURT.

CORPORATIONS—POWER OF STOCKHOLDERS—DIVIDENDS.—The individual stockholders of a corporation have no power as such to represent the body-corporate, or in any manner to interfere with its management. And the board of directors can on·y bind the corporation when acting as a body; and no understanding or agreement among individual members of the board is binding on the corporation.

Where a corporation received a bonus from a town for the location of its plant, an understanding among the stockholders that the value of this bonus was to be declared as earned dividends on the then existing stock so that no future stockholder should enjoy the benefits to be derived from its acceptance, is not binding on the corporation, the dividend never being, in fact, declared by the board of directors· Therefore, one of the then existing stockholders who has since parted with his stock has no right to share in the value of the bonus.

RICHARD P. ERNST, J. W. BRYAN AND THOMPSON, RICH-ARDS & PARK FOR APPELLANT.

1. The declaration of a dividend is within the discretion of the board of directors, and until thus declared its payment can not be enforced by a stockholder, even though there should be surplus funds from which such dividend might be paid. (2 Waterman on Corporations, secs. 210, 214; Railroad Co. v. Nichols, 119 U. S., 296; Moss' Appeal, 83 Pa. St., 264; Boardman v. Railroad Co, 84 N. Y., 157; Minot v. Paine, 99 Mass, 101; Gordon, &c, v. Richmond R. Co, 78 Va., 501.)

2. The board of directors can only bind the company when acting as a body, and no understanding or agreement among individual members of the board is binding on the corporation. (Beach on Private Corporations, sec. 224; Taylor on Private Corporations, sec. 258; 1 Waterman on Corporations, sec 124; Bank v. Christopher, 40 N. J. Law, 485; Turnpike Co. v. Craven, 45 Pa. St, 386; Lockwood v. Boone Co., 42 Mich, 536; Railroad Co. v. Burns, 92 Ill., 302; Baldwin v. Canfield, 26 Minn, 43; Besch v. M'f'g Co., 36 Mo Ap, 333.)

3. As a dividend could not be declared without impairing the capital of the company, the board of directors could not lawfully declare a dividend, or distribute any of the assets among stockholders. (2 Waterman on Corporations, sec. 210; Insurance Co. v. Page, et al., 17 B. M., 440; Gratz v. Redd, 4 B M., 188; Railroad Co. v. Bridges, 7 B. M., 556; Morawetz on Corporations, secs. 344, 404.)

4. The sale of stock in a corporation carries with it the right to share in any surplus remaining undistributed, and to receive any dividend, whether in stock or in cash, thereafter declared on account thereof, unless the vendor's interest in such surplus or prospective dividend is expressly reserved. (Beach on Private Corporations, sec. 619; 2 Waterman on Corporations, secs. 214–15; Burroughs v. Railroad Co., 67 N. C., 376; Boardman v. Railroad Co., 84 N. Y., 157; Jermain v. Railroad Co., 91 N. Y., 483; Morawetz on Corporations, sec. 320; Hyatt v. Allen, 56 N. Y., 553; Clapp v. Astor, 2 Edw., Ch., 329; 5 Am. & Eng. Enc. of Law, sec. 4.)

HALLAM & MYERS for appellees.

The bonus was undoubtedly in equity the property of those who held the original stock, and the circumstance that the corporation did not go through the technical form of ratifying is of little force in this court as against the maxim that equity will consider that done which ought to have been done.

JUDGE PRYOR delivered the opinion of the court.

The appellee, Burton H. Gedge, was at one time the holder and owner of two hundred and seventy-five shares of stock in a corporation, known as the American Wire Nail Company. He sold this stock on the 6th of February, 1891, to W. B. Thomas, C. H. Garvey, C. P. Garvey and E. J. Buffington, and these parties sold or transferred it to Landon Thomas.

After the sale of this stock the appellee instituted this action in equity in the Kenton Circuit Court against the American Wire Nail Company, uniting with that corporation the parties to whom he sold his stock, and Landon Thomas, as defendants, claiming the right to certain earned dividends on his stock that had never been paid him. His claim is based on the following state of facts:

The chief office and manufacturing establishment of the corporation (defendant) was at one time located in the city of Covington, and in the year 1888

the board of trade of Anderson, in the State of Indiana, made a proposition to the corporation to remove its plant to that place, and, as an inducement, agreed to give the corporation ten acres of ground, the use of a natural gas well, and a part of the proceeds of the sale of numerous town lots. This proposition was accepted, and the plant removed from Covington to Anderson. This bonus was estimated in value at twenty or twenty-five thousand dollars, and the stockholders in the corporation at the time the plant was removed contemplated declaring the value of this bonus as earned dividends on the then existing stock, so as that no future stockholder, or others than the holders of stock in existence at that time, should enjoy the benefits to be derived from the acceptance of the liberal offer made by the Anderson board of trade.

He alleges in his petition that at the time he sold his stock, this dividend or indebtedness to him by the corporation was not included, and insists that he is entitled to his pro rata share of the value of this bonus, with the other share-holders whose stock existed when the donation was made, and asks for judgment accordingly.

The defense is, that no dividend had been earned or declared by the corporation, and that its financial condition was such as that no dividend could have been declared, and that instead of making its plant at Anderson, or its value, so much earned dividends, either in money or stock, its constant effort was to raise money to prevent a financial wreck, and that no such agreement as alleged had been entered into or consummated.

It is further claimed that when the sale of the appellee's stock was made, all the right, title and interest in this plant, or the bonus, passed to the purchasers. The writing evidencing the sale, reads:

"FEBRUARY 6, 1891.

"B. H. Gedge hereby agrees to sell, and W. B. Thomas, C. H. Garvey, C. P. Garvey and E. J. Buffington, jointly and severally agree to buy B. H. Gedge's two hundred and seventy-five shares of capital stock of the American Wire Nail Company, of Covington, Ky., at its par value of one hundred dollars per share, to be paid for as follows: Two thousand five hundred dollars cash on or before February 16, 1891, the balance to be paid in about weekly cash payments, the entire purchase money to be paid on or before April 1, 1891."

This writing was signed by all the parties, and when executed, there was no reservation of any interest, on the part of the original stockholders, to the ground upon which this plant was located, or to any portion of the bonus, or any claim asserted by the appellee, directly or indirectly, that would indicate a purpose on his part to share in that which, from the proof in this case, was neither a cash nor a stock dividend.

That the stockholders, or some of them at least, and perhaps all, some time after this bonus had been accepted, expressed an intention to appropriate its benefits to the shares then in existence, is no doubt true, but that intention was never carried into effect, but on the contrary, the subsequent financial troubles of the corporation afforded a strong reason for with-

holding any action that would perfect this original purpose of the stockholders.

It does appear that one Garvey, connected in some way with the business, after an engine had been purchased for the rod-mill and proved to be unfit for use, and on account of which the company sustained considerable loss, was authorized to negotiate with one of the defendants, W. B. Thomas, and induce him to take new stock, with the reservation on the part of the then stockholders of twenty thousand dollars as the value of this bonus, giving to this extent the old stock preference over the new stock. Thomas, under this arrangement, took thirty thousand dollars of the stock at par, and we may assume from the testimony that he became a stockholder under that arrangement. After the money derived from the sale of stock to Thomas had been expended on repairs and the purchase of a new engine, the works were again put in full operation, but in a short time the *mill* was destroyed by fire, and this loss necessitated additional capital or a cessation of the corporate business. The stockholders, after unsuccessful efforts to raise money, again applied to Thomas for relief, and it was then understood by the stockholders, or several of them, that in securing more money, or selling more stock, the distribution of the bonus between the original stockholders should be abandoned, if necessary, in order to obtain the required means for conducting the business. Landon Thomas, a brother of the defendant, W. B. Thomas, the latter being inexperienced in business, was the one with whom the trade was made, and twenty-five thousand

dollars additional stock taken, with the understanding his brother was to share in the bonus as well as all other assets of the company.

We think it manifest, from the record before us, that the stockholders, or several of them at least, when this appeal was made to Thomas through their agent, did so with the agreement that his stock was to participate in all the assets of the company, and equally certain that the negotiations between Garvey, who was representing the corporation, and Landon Thomas, the adviser of his brother, led the latter to believe that all of his stock was to share in the bonus, and no preference given. If this was the settlement of a mere partnership, upon the character of proof here, the incoming partner advancing as much as fifty-five thousand dollars to save the firm from financial ruin, and investing his money in a business that proved for the time so discouraging, the chancellor would not fail to recognize the claim of Thomas as to a perfect equality in the assets of the corporation with the original stockholders.

No rational business man would invest his money with a view of relieving others in pecuniary trouble, and at the same time agree that his own stock should be of less value than the stock of those calling on him for aid, and to use the language of a witness in this case, it would be unjust to make such a distinction.

The whole of this case, however, as to the division of the bonus, and the taking of the stock by Thomas, is based upon an *understanding* the parties had, that never constituted an agreement that could be enforced as to this bonus. There was not a time from the ac-

ceptance of the Anderson proposition the stockholders would have agreed to have the board of directors declare the value of this *bonus* a stock or cash dividend, and this the entire proof shows. There was no surplus fund of the corporation to be divided, and it is apparent that such an agreement, if evidenced by the board of directors making such an order, would have impaired the capital of the company and lessened the chances for obtaining new stock or additional loans. If the informal suggestions or understandings between stockholders of a corporation as to what should be done, is to create a liability on the corporation, then the existence of a board of directors could only be regarded as a matter of convenience, and not, as is well settled, for the purpose of spreading on the records of their meeting that which is to bind the corporation or evidence its action.

Here, stockholders undertake to declare dividends where none exists, and it is evident that at no time, if they had such power, would any such dividend have been declared. From the time this plant was removed in the year 1888, up to the sale by the appellee of his stock on the 6th of February, 1891, at no meeting of the board of directors was it contended or intimated that such an order as declaring this dividend in stock should be made ; but in the meantime it was, by resolution, declared "that it was not expedient to declare a dividend ;" and while this resolution had no reference to this *bonus*, there was entered on the records of the corporation, only a short time before the sale to these defendants, a resolution reciting "that large sums of money had been expended, far in excess of the com-

pany's earnings," showing the reason why the stock-holders had declined to convert, we might say, the plant itself into stock for the benefit of the original stockholders.

Nothing was said to Thomas after he had taken the last stock to the effect that a part of the company's property was not to be regarded as assets, nor was it intimated by the appellee when he sold that the corporation was in any manner indebted to him. The first stock taken by Thomas was under the suggestion that the corporation would do what was right by him, and in taking the last stock it was certainly his brother's understanding from the agent sent by the other stockholders to make the negotiation, that this bonus belonged to all the stock—old and new alike.

We have been considering the claim of the appellee in this case as if the stockholders, at informal meetings, could regulate and control the affairs of the corporation by declaring dividends and determining what shall be dividends, and the mode of disposing of its stock without regard to the action of the president and directors who represent the body-corporate. The individual stockholders, says Mr. Morawetz in his work on Corporations, as such, have no power to represent the body-corporate, nor in any manner to interfere in its management. (Morawetz on Private Corporations, page 88.)

These agents are elected by the stockholders, and, when acting within the scope of their authority, can not be interfered with, except to be removed by the stockholders when an election is held for that purpose. If dividends are declared, and the agents of the corpo-

ration refuse to pay them to the stockholder, equity will interpose and require payment, for when declared they belong to the stockholder; but in this case the stockholders are attempting to declare dividends in the discussion of matters pertaining to the corporation at informal meetings, without reference to the preservation of the capital stock, and to convert into earnings or profits this *Anderson bonus*, without any corporate action whatever, and when the testimony shows that at no time could the consent of all the stockholders have been obtained, their entire action exemplifying the wisdom of the rule that "the board of directors can only bind the company when acting as a body, and no understanding or agreement among individual members of the board is binding on the corporation." (Beach on Private Corporations, sec. 224.)

The appellee was an active participant in the management of the corporation from the early part of the year 1889 up to the date of the sale of his stock to the appellants on the 6th of February, 1891; and while corporate meetings were held of a business character from time to time, no mention seems to have been made of the disposition of this bonus, and for the reason, doubtless, of the abandonment of such a purpose on the part of the board of directors, caused by the financial condition of the corporation

The sale by the plaintiff vested the purchasers with all his interests in the enterprise. There was then no dividend of any kind or description, and we perceive no reason for granting the relief sought.

The judgment is, therefore, reversed, with directions to dismiss the petition.