## F. T. Gunther Grocery Company v. Hazel.

(Decided March 12, 1918.)

### Appeal from Daviess Circuit Court.

1. Corporations—Power of Officer—Personal Interest.—In the compromise and settlement of claims asserted against both a corporation and its president, as between the corporation and himself, the president can not represent both so as to be personally benefited at the expense of the corporation.
2. Corporations—Officers—Account and Settlement.—In an action to settle accounts between a corporation and its president, where the president, representing the corporation and himself, compromised and paid off claims against both, each should contribute to amount paid in discharge of the compromise agreement in proportion to benefits received.
3. Corporations—Preferred Stock—Rights of Holder.—Preferred stock of a corporation, issued pursuant to its charter and by its terms redeemable six years after company's organization, is, after maturity, an indebtedness which may be enforced against the corporation, it being solvent. .

E. B. ANDERSON for appellant.

BIRKHEAD & WILSON and BEN D. RINGO for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

The appellant is a corporation, doing a wholesale grocery business in the city of Owensboro, and from October, 1902, until July, 1907, the appellee, W. S. Hazel, was its president and in complete control of the business. In August, 1910, three years after he had severed his connection with the corporation, it filed this action at law against him seeking to recover numerous amounts which, it was alleged he owed the corporation, growing out of various transactions with and for the corporation during the time he was its president. He answered, denying liability for most of the items set up in the petition and filed a counterclaim for a large

amount, covering numerous other transactions had with and for the corporation while he was its president.

It is manifest that, though the action had been begun at law, it was in reality, and was so recognized by both parties, a suit for a settlement by the corporation against its president, covering many and intricate transactions during a period of about five years; and, by agreement, the action was transferred to the equity docket and referred to the master for an accounting. Much proof was taken by depositions, and the master filed his report covering every item claimed by either party against the other, which, upon balancing, showed plaintiff was indebted to the defendant in the sum of $2,441.63, with interest from May 1, 1916. Both parties filed exceptions to the report and, upon final hearing, the chancellor overruled the exceptions of both parties and rendered judgment in conformance with the master's report. From that judgment, the plaintiff has appealed.

The correctness of the master's findings with reference to numerous items is contested here by appellant, but, upon a careful examination of all the evidence relative thereto, we find that the report is fully sustained by the evidence, except as to two items which were involved in a single transaction. As it would extend this opinion to an unreasonable length and serve no useful purpose to do so, we shall not review the testimony with reference to such contested items as we approve the findings of the master, but shall confine ourselves to a consideration of the items as to which we think he was in error. These items are: The claim of plaintiff against defendant for contribution to an attorney's fee, paid by plaintiff for legal services rendered in connection with a settlement with Mrs. Maggie Brodie and members of her family, who were the owners of $10,000.00 of the preferred stock, and $1,000.00 of the common stock, in the corporation; and the claim of defendant against plaintiff for $2,000.00, growing out of the same transaction.

The $10,000.00 of preferred stock was issued to the Brodies on October 27, 1902. This stock by its terms provided for dividends at the rate of six per centum per annum, payable semi-annually; for its redemption by the corporation at any time, at its option, after two years from the date of the company's organization, which was March 22, 1901; that the owner might demand

its redemption at any time after six years from the date of incorporation; and it was further provided that, upon redemption, the company would pay to the owner the par value of the stock with six per centum interest from its date. The company had not paid any dividends upon either its preferred or common stock; and the Brodies, in the exercise of their right to demand a redemption, after March 22, 1907, were demanding of the company, and threatening suit to enforce, a redemption of the preferred stock owned by them. On October 22, 1902, appellee had purchased some common stock in the corporation from Mrs. Brodie and executed to her his note for $2,000.00 in payment therefor; and she had sued him to enforce the collection of the note and he was resisting payment upon the ground that he had been overreached in the purchase of the stock upon account of which he asserted a counterclaim for $2,400.00 damages. On May 8, 1907, a compromise was effected between the Brodies, on the one side, and plaintiff and defendant, upon the other side, in which all claims asserted by or against the Brodies, were settled. In this settlement, the appellee represented not only himself but also the corporation as its president. This settlement was reduced to writing, and is as follows:

"This agreement made and entered into this the 18th day of May, 1907, between Mrs. Maggie Brodie, Robert Brodie, A. J. Brodie and E. T. Franks, of the one part and the F. T. Gunther Grocery Company and W. S. Hazel of the other part, all of Owensboro, Kentucky. Witnesseth:

"That whereas the said Mrs. Maggie Brodie now has a suit pending in the Daviess circuit court against W. S. Hazel for the recovery of the sum of two thousand dollars ($2,000.00) with interest thereon, and whereas the notes are secured by thirty shares of the common stock of the F. T. Gunther Grocery Company transferred as collateral by said Hazel, and whereas in said action said W. S. Hazel has filed an answer pleading a counterclaim growing out of an alleged deficiency in the value of certain stocks purchased by said defendant from said plaintiff in the F. T. Gunther Grocery Company and whereas the said Mrs. Brodie, E. T. Franks, Robert Brodie and A. J. Brodie hold certain dividend checks against the F. T. Gunther Grocery Company which have been protested for non-payment and as follows: One in

favor of Robert Brodie dated October 22, 1902 for $184.00, another in favor of Mrs. Maggie Brodie dated October 22, 1902, for $175.00, one in favor of E. T. Franks of the same date for $40.00 and one in favor of A. J. Brodie of the same date for $40.00, and whereas the said E. T. Franks owns ten shares of the par value of one hundred dollars per share of the common stock of the F. T. Gunther Grocery Company, and the said Mrs. Maggie Brodie owns eighty shares of the preferred stock of the F. T. Gunther Grocery Company of the par value of one hundred dollars per share and the said Robert Brodie owns ten shares of the par value of one hundred dollars per share of the preferred stock of the said grocery company, and the said A. J. Brodie owns ten shares of said preferred stock in said company of the par value of one hundred dollars per share, and whereas no dividends have been paid on any of said preferred or common stock and there is a controversy pending between said parties concerning the validity of a portion of said stock and as to whether dividends have been earned thereon, and whereas all the parties hereto desire to settle said controversy and every disputed question connected with said stock, notes, dividend checks and counterclaim filed by said Hazel in said action, and have agreed to settle same upon the terms and conditions hereinafter stated.

"Now, therefore, the said Mrs. Maggie Brodie, Robert Brodie, and A. J. Brodie have this day surrendered to the said F. T. Gunther Grocery Company the said ten thousand dollars of preferred stock, it being understood that they are not to be held responsible in any event for said stock or dividends claimed to be due thereon, and said Mrs. Brodie, said Robert Brodie, said A. J. Brodie and said E. T. Franks have surrendered and delivered to said company said dividend checks hereinbefore set out and the notes and collateral stock declared on in said equity action in favor of Mrs. Brodie against said Hazel, and the said E. T. Franks has this day transferred and assigned without recourse on him said ten shares of the common stock of said company to said W. S. Hazel, all of which is in consideration of the sum of fourteen thousand dollars ($14,000.00) this day paid by said F. T. Gunther Grocery Company and W. S. Hazel to the said Mrs. Maggie Brodie, Robert Brodie, A. J. Brodie and E. T. Franks, the receipt of which is

hereby acknowledged. The said F. T. Gunther Grocery Company acknowledges receipt of said certificates and preferred stock and said unpaid dividend checks. The said W. S. Hazel now acknowledges receipt of said notes and collateral stock sued on in said equity action, and also the receipt of said ten shares of the common stock of said grocery company assigned to him by said Franks. The said equity action and the counterclaim are to be dismissed settled, each party to pay his own cost and with leave to withdraw the notes and stock filed.

"This instrument is now executed to show that all said matters have been and are now fully settled and adjusted, the said checks, notes and stock being delivered and said money paid in full settlement and satisfaction thereof.

"Executed in duplicate this the date and year first herein written.

> "MAGGIE BRODIE, by Robert Brodie,
> "ROBERT BRODIE,
> "A. J. BRODIE, by Robert Brodie,
> "E. T. FRANKS,
> "THE F. T. GUNTHER GROCERY Co.,
>     By W. S. Hazel, Pres.,
> "W. S. HAZEL."

Of the $14,000.00 paid to the Brodies, the defendant paid $2,000.00 by his personal check, and $12,000.00 was procured from the Bank of Commerce of Owensboro, for which defendant and C. A. Rogers, at the time manager of the corporation, executed their joint note, to secure which they deposited as collateral the $10,000.00 of preferred stock surrendered by the Brodies, and common stock owned by defendant.

On July 19, 1907, defendant sold to R. S. Hughes and C. A. Rogers, 245 shares of the stock of the corporation owned by him, at par, for which they paid him $24,500.00, and with $12,000.00 of which defendant paid off the note for that amount to the Bank of Commerce, to which was attached as collateral part of the stock he was selling to Hughes and Rogers and the original certificates for the preferred stock formerly owned by the Brodies. Defendant then, and not until then, cancelled the Brodie stock and as president of the corporation issued to himself certificates for $10,000.00 of preferred stock, and thereupon resigned as president and director of the corporation. A few days previous to this transaction, the

corporation had amended its articles of incorporation, by which was authorized the reissue of the $10,000.00 of preferred stock, which, we think the evidence conclusively shows, had been redeemed and retired by the company in the settlement with the Brodies.

The new issue of $10,000.00 of preferred stock, which the defendant on that day acquired, was a part of the $24,500.00 that he received for his common stock and in this way: The $24,500.00 was paid to him by Hughes in two checks, one for $12,000.00 and the other for $12,500.00. With the $12,000.00 check he paid off the $12,000.00 note to the Bank of Commerce, and received in lieu thereof the $10,000.00 in preferred stock in the corporation. So, out of the transaction with Hughes and Rogers, he had $12,500.00 in money and $10,000.00 of preferred stock in the corporation, and conceiving that he in some way had been imposed upon by Hughes and Rogers in the transaction with them he demanded of them payment of an additional $2,000.00, which they refused to pay, and he entered suit against them for that amount; but, as they had paid him $24,500.00, the full amount they had agreed to pay him, it is manifest that, although he was seemingly $2,000.00 short in the transaction, having only $12,500.00 in money and $10,000.00 in stock, he had no claim against Hughes and Rogers for the discrepancy. It is likewise manifest that whatever claim, if any, he had against any one for the $2,000.00, was against the plaintiff corporation growing out of the execution of the $12,000.00 note to the bank in the Brodie settlement. The claim for this $2,000.00 is the principal item in defendant's counterclaim, and that this claim was sustained by the report of the master and judgment of the chancellor is the chief complaint of plaintiff upon appeal.

In the Brodie compromise, there was a settlement of the differences between the Brodies and the corporation and also the differences between the Brodies and the defendant; and in that settlement the defendant attempted to represent not only himself but also the corporation. There had never been any settlement between the corporation and defendant of that transaction except in so far as the defendant may have attempted to do so by representing both himself and the corporation, and this he could not do; nor had there ever been a ratification by the corporation of any pretended settlement or agreement that the defendant may have attempted between himself and the corporation in this matter. We have not

overlooked the fact that C. A. Rogers, who was then the manager of the corporation, was a party to the Brodie compromise and to the execution of the note to the bank for $12,000.00, but his participation in that transaction has no binding force upon the corporation, because it is clearly shown that in that transaction he was beneficially interested with the defendant, acting with him in representing their joint interests which were hostile to the interests of their principal, in an attempt to acquire for their joint account the preferred stock owned by the Brodies, and that he subsequently surrendered whatever interest he had therein to the defendant; so, Rogers' participation in that settlement may be entirely disregarded.

Both plaintiff and defendant are here seeking the assistance of a court of equity to adjust their unsettled differences with reference to the Brodie settlement, and both must do equity and neither is entitled to an advantage over the other. The corporation has neither recognized nor ratified any adjustment between it and defendant relative to the Brodie settlement; it has, however, recognized and ratified that settlement in so far as the Brodies were concerned. That agreement, by its terms, shows that the corporation in fact redeemed the preferred stock owned by the Brodies, and that the defendant did not then become the purchaser of that stock.

This conclusion is further supported by the fact of the issuance to defendant of new certificates of stock on July 19, 1907, for the Brodie preferred stock and the subsequent redemption by the company of this stock as thus issued. In other words, the Brodie settlement is binding upon the company and the defendant as a settlement of their differences with the Brodies and the redemption by the company of the matured preferred stock owned by the Brodies, but is of no force whatever as between the company and the defendant, because he could not in that settlement represent the hostile interests of the company and himself to his profit. Thompson on Corporations, vol. II, sections 1216 and 1220; Covington & Lexington R. Co. v. Bowler's Heirs, 9 Bush 468; Main Jellico Mountain Coal Co. v. Lotspeich, 14 Ky. L. R. 595; Blake v. Ray, 110 Ky. 705.

The facts with reference to the Brodie settlement and the benefits derived therefrom by plaintiff and defendant are clearly proved, and it is not a matter of difficulty to determine the exact amount each should contribute to the

$14,000.00 paid to the Brodies. . That settlement was mutually advantageous to plaintiff and defendant, and in the adjustment of their differences growing out of that settlement it is equitable and just that each should contribute in proportion to the benefits received. Under the terms of the issue of the preferred stock to the Brodies, they had a claim against the corporation for $10,000.00 with simple interest at six per cent., amounting to $12,700.00, the semi-annual dividends provided for, not having been earned, were not paid; and in that settlement, plaintiff received $12,700.00. Mrs. Brodie had a claim against the defendant for $2,000.00, with five per cent. interest thereon from October 22, 1902, subject to his counterclaim for damages for deficiency in value of the stock she had sold him and for which he executed his note. As all of the items involved in that settlement, except this note, are for shares of stock in the corporation and as this note was given in payment for such stock purchased at par, we shall regard it as so much stock purchased on that date and disregard the interest due thereon; and the defendant was benefited by the cancellation of his note for which he obtained $2,000.00 of stock, and by the acquisition of an additional $1,000.00 of common stock from the Brodies. .So, in that settlement, defendant got $3,000.00 at par of the company's stock, and the company retired its stock of the par value, at that time, of $12,700.00, making a total of $15,700.00 of stock, at par, that the Brodies surrendered for $14,000.00; and for the services rendered by the attorneys representing both plaintiff and defendant, plaintiff paid $500.00. On the basis of this settlement, $15,700.00 for $14,500.00, the valuation of the stock in the corporation was $92.35 per share, instead of $100.00, the par value. Of the $14,500.00 paid to the Brodies and the attorneys, plaintiff should have contributed in proportion to benefits received, that is $12,700.00 at $92.35 which amounts to $11,729.50, and the defendant, $2,770.50; but plaintiff paid only the $500.00 attorney's fee and defendant gave his personal check for $2,000.00 and for the remaining $12,000.00 executed his note, which he subsequently paid. So that, of the $14,000.00 thus paid by defendant, $11,729.50 less $500.00 attorney's fee paid by the corporation, or $11,229.50, was the obligation of the plaintiff, and of this sum it has repaid to defendant, $10,000.00 in preferred stock issued to him on July 19, 1907, which he agreed to accept at par in the trade with Hughes and Rogers.

Therefore, as a net result of the Brodie settlement, the company was justly indebted to defendant in the sum of $1,229.50 which, with interest to May 1, 1916, the date upon which interest on all other claims was adjusted by the master; amounts to $1,877.44.  So, charging the plaintiff with this sum and adopting the other items in controversy as allowed by the master, we have the following statement of accounts as of May 1, 1916:

Amounts Due Defendant by Plaintiff—
Townsley note charged by mistake
   to defendant's account at New
   Farmers & Traders Bank.................$  170.50
Sundry small items allowed by the
   commissioner .........................................    260.10
Amount due on Brodie settlement......... 1,877.44
                                          $2,308.04

Amounts Due Plaintiff by Defendant—
Greenwell notes collected by defend-
   ant ...............................................................$  498.00
Frank Meis account............................................    172.11
Cost item in Brodie suit.................................      6.00
Salary collected by defendant after
   resignation as president.............................    264.32
Hazel & Zeigler warehouse account......     57.40
Open account..........................................................     39.04
                                          $1,036.87

Net amount due defendant from
   plaintiff ....................................................    $1,271.17

Plaintiff urges most earnestly that section 544, Kentucky Statutes, which prohibits a corporation from purchasing its capital stock, rendered illegal the purchase by plaintiff of the $10,000.00 of preferred stock owned by the Brodies, and therefore it must be held that, in the Brodie settlement, defendant purchased that stock at $12,000.00 for which he gave his individual note to the bank; but that stock, issued pursuant to the company's articles of incorporation as preferred stock and by its terms due and payable was redeemable by the company and its redemption was not such a purchase as is prohibited by the statute referred to.  The division of its capital stock into common and preferred stock was authorized by section 564, Kentucky Statutes, and the pre-

ferred stock of this corporation by its terms and pursuant to the articles of incorporation was, after maturity at least, as against the corporation and owners of the common stock, the rights of no creditors being involved, but an indebtedness against the company which it was bound to redeem. 7 R. C. L. 200; 10 Cyc. 571; Rider v. Delker & Sons Co., 145 Ky. 634, 140 S. W. 1011, 39 L. R. A. (N. S.) 1007 and note.

Wherefore, the judgment is reversed and cause remanded with directions to enter judgment for defendant for the sum of $1,271.17 with interest thereon from May 1, 1916.