# Taylor v. Axton-Fisher Tobacco Co.

July 15, 1943.

S. J. Stallings for appellant.

Woodward, Dawson & Hobson for appellee.

Ogden, Galphin, Tarrant, Street, Phillip S. Ehrlich, John E. Tarrant and Squire R. Ogden for Transamerica Corporation amicus curiae.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The case presents a novel question of power of the board of directors of a corporation to rescind or modify its action in calling certain stock for redemption or retirement.

The Axton-Fisher Tobacco Company, a Kentucky corporation, has or had three classes of stock, which are designated as Preferred, Class A Common and Class B Common. The preferred stock (13,698 shares outstanding) bears cumulative dividends at the rate of 6 per cent per annum. Class A Common stock (15,397 shares outstanding) bears cumulative dividends at the rate of $3.20 per share per annum and has other substantial rights. Class B Common stock (142,080 shares outstanding) has the sole voting power in the management of the corporation except in the event of default in the payment of as many as four quarterly dividends on either of the other two classes. The Preferred stock has first right to dividends. It is not involved in the case. Class A Common stock has few of the attributes of ordinary common stock, it being of the nature of secondary preferred stock. The character and general rights of these respective classes of stock are described in Franke v. Axton-Fisher Tobacco Co., 289 Ky. 687, 160 S. W. (2d) 23, and, in the particular respect involved, in the further course of this opinion.

The articles of incorporation contain a provision that all or any part of the Class A Common stock, at the option of the directors, upon sixty days notice, may be redeemed on any quarterly dividend-payment date by the company paying $60 a share therefor, and all accrued unpaid dividends. If less than all the stock be retired, all stockholders of the class must be treated alike. On April 30, 1943, the board of directors adopted a reso-

lution reciting that pursuant to the above provision of the charter the entire outstanding Class A Common stock was called for redemption on July 1, 1943, at $60 per share plus the accrued unpaid dividends thereon, including one payable July 1st, amounting to $20.80 per share, an aggregate of $80.80. A trust company was named as redemption agent and the officers of the corporation were authorized and directed to deposit $1,244,077.60 with the trust company as a special fund with which to effectuate the redemption.

On June 16, 1943, the directors adopted a resolution modifying their previous action and changing the call for the retirement of Class A Common stock from a mandatory to an optional one, leaving it to the option of the holders thereof whether they would surrender the stock for redemption on July 1st upon the same terms or would retain it without impairment of the rights appertaining thereto.

A holder of a small amount of Class B Common stock instituted this suit for a declaratory judgment respecting the power and right of the directors to modify the action of April 30th. She denied such power. The circuit court declared it was a proper exercise of power. On the appeal the Transamerica Corporation, claiming to be the owner of about 85 per cent of the Class B Common stock and none of Class A (having previously exchanged what it owned, a very large amount, for Class B) has joined the plaintiff on the appeal by filing a brief as amicus curiae challenging the validity of the action of the board and the correctness of the judgment.

On first impression it would seem clear that the directors had a perfect right to change their minds, and that their action in modifying the first call for redemption was but a decision made in the course of management, well within the common law and statutory powers of a board of directors of a corporation in their discretion to manage its affairs intra vires. It is fundamental and elemental that the action of directors when exercised in good faith and not in fraud of the rights of the stockholders is not subject to their control and will not be interfered with by the courts. KRS 271.230; Manufacturers' Land & Improvement Co. v. Cleary, 121 Ky. 403, 89 S. W. 248; Reid Drug Co. v. Salyer, 268 Ky. 522, 105 S. W. (2d) 625; Fletcher, Cyclopedia of Law of Private Corporations, Sections 505, 2104. It would also appear

that the power to recall or modify the original action existed until July 1st, as of which date the redemption would be consummated; and, further, that Class A stockholders alone might have complained of the modification but for the fact they were not prejudiced thereby. These are the essential arguments of the appellee.

The general and necessary conception of power and right of exclusive management in the directors, obviously, is subject to the elementary principle that if in a particular instance their action created rights in another they cannot alter or affect those rights to his prejudice. The first resolution of this board of directors materially changed the entire corporate structure. It changed the status of both holders of Class A and Class B common stock very definitely and directly. The question is whether the new status could be altered. The subsequent resolution of June 16th did not effectually disturb that changed status of Class A stockholders for they had the right to continue it; but it could not and did not give any choice to the Class B stockholders.

The rights of the holders of Class A stock and of the corporation as to its redemption rested on an express contract, namely, the provision of the articles of incorporation which made them junior preferred stockholders and subject at all times to have their stock retired. Thompson on Corporations, Sections 189, 210; 13 Am. Jur. Corporations, Section 318; Fletcher, Section 5443; Westerfield-Bonte Co. v. Burnett, 176 Ky. 188, 195 S. W. 477; F. T. Gunther Grocery Co. v. Hazel, 179 Ky. 775, 201 S. W. 336; Fayette Realty & Finance Co. v. Commonwealth, 229 Ky. 556, 17 S. W. (2d) 722; Crimmins & Pierce Co. v. Kidder Peabody Acceptance Corporation, 282 Mass. 367, 185 N. E. 883, 88 A. L. R. 1122.

We have a declaration of principle in Fox v. Johnson & Wimsatt, 75 U. S. App. D. C. 211, 127 F. (2d) 729 (an opinion by Mr. Justice Rutledge, presently of the Supreme Court) directly pertaining to the Class A stockholders and indirectly to Class B. A preferred stockholder sued for specific performance of a resolution of redemption of the class of stock he owned. It was stated that by the provision of the charter giving the corporation the right to redeem the stock the shareholders in effect contracted that their shares should be redeemable at the corporation's option. It was held that the stockholder could not enforce the redemption until the direc-

tors had exercised the option definitely and contractually in accordance with the power conferred on them. The denial of specific performance was rested on the ground that the resolution of the directors merely declared a policy of redemption and was conditional, so the stockholder's contractual right did not mature into an enforcible one because of the character of the action of the board and the conditions had failed to materialize. See also Rider v. John G. Delker & Sons Co., 145 Ky. 634, 140 S. W. 1011, 39 L. R. A., N. S., 1007; Westerfield-Bonte Co. v. Burnett, supra; Peir v. Commissioner of Internal Revenue, 9 Cir., 96 F. (2d) 642, op. cit. 651; 28 Michigan Law Review, p. 764. Indeed, it is conceded by the appellee that the action of the directors on April 30th vested rights in the holders of Class A stock which could not have been voided. We think if it vested rights in one class it did in the other for the reasons to be stated.

We should not test the rights inuring to the holders of Class B stock by the fact that the later resolution made it optional with the Class A stockholders to accept or reject redemption, hence that they were not prejudiced. It may be reasonably presumed that at least some of them will accept it. The question is was the first change made in the status of Class B shareholders revocable without their consent, or did they acquire a vested right under the resolution making it obligatory on Class A stockholders to redeem their stock and sever all relationship to the corporation. This is to be determined by an examination of the charter rights of holders of Class B stock as affected by the charter rights of holders of Class A stock. They are fairly stated by the amicus curiae to be: (1) The right to cumulative dividends on the $10 par value of $3.20 per share per annum, plus an amount payable to all of the holders of Class A stock as a class equal to the total of any additional dividend declared in any year in excess of $1.60 per share on all of Class B stock; (2) The right to vote at the stockholders' meetings so long as their dividends were in default; (3) The right, unless the holders of two-thirds thereof consented, to prevent the corporation from (a) incurring an indebtedness maturing later than twelve months other than in the ordinary course of business, or (b) mortgaging or pledging property to secure an issue of bonds, or (c) disposing by sale, consolidation, mortgage, lease or otherwise the property and business of the

corporation as a whole; (4) The right in the event of dissolution, liquidation, merger or consolidation or sale of substantially all of the corporate assets, to receive per share twice the amount paid upon each share of Class B stock; and (5) The right, in the event of redemption, to receive all accrued and unpaid dividends and the sum of $60 per share.

Manifestly, it was very much to the interest of the holders of Class B stock to have all these priorities, obligations and restrictions on and conditional joint control of the management eliminated. A substantial advantage was given to and acquired by the Class B stockholders by the resolution definitely and unqualifiedly calling Class A stock for redemption. That being true, it was vested and fixed, so the directors could not withdraw or cancel or modify their action to the prejudice or detriment of Class B stockholders.

The first action of the directors may not be regarded as but an offer or proffer, or in the nature of such, capable of being withdrawn before acceptance or consummation. Rather it is the converse. The charter provision constituted a continuing contractual power and corresponding right which only waited action by the directors for use and consummation. It was a continuing option. They exercised their authority and thereby closed the matter insofar as it concerned the corporation and the two classes of stockholders affected thereby. It made Class A stockholders strictly creditors and thereby freed the Class B stockholders of the restrictions on management and of the subordination to the right to share in the earnings of the company.

Nor can we agree with the appellee that the result of this action of the directors is to be regarded only as an incidental benefit flowing to the Class B stockholders since they were not promisees of the contract nor parties to whom performance was to be rendered. See 2 Williston on Contracts, Section 402. The provision of the articles of incorporation and the effect of the action of the directors are too substantial and too great to be so regarded. We think the provision for redemption of Class A stock was made as much for the one as for the other class. If it was not, then it was very delusive.

The principle applicable in cases where there has been a declaration of dividends is applicable here. In a

sense, or qualifiedly undivided profits of a corporation belong to the stockholders, but disposition or distribution thereof rests within the fair discretion of the directors. Smith v. Southern Foundry Co., 166 Ky. 208, 179 S. W. 205. However, once they make a declaration of distribution or dividend and set apart a fund for the payment, their power is exhausted in the particular instance and their action is irrevocable without the consent of the stockholders. As respects the dividend, they have been changed from stockholders to creditors. Until the declaration of the dividend, the stockholders had only a potentiality. Afterward they have a vested right in the money and may maintain an action at law to enforce it. American Wire Nail Co. v. Gedge, 96 Ky. 513, 29 S. W. 353; Lobaco Co. v. Chafflin, 193 Ky. 225, 226, 235 S. W. 993; Fidelity & Columbia Trust Co. v. Louisville R. Co., 265 Ky. 820, 97 S. W. (2d) 825; Thompson on Corporations, Section 5306 et seq.; Fletcher, Cyclopedia of Law of Private Corporations, Sections 5325, 5349, 5365.

It seems to us that the rationale upon which rests this right to enforce collection of a declared dividend controls the decision of this case, namely, that the status of both classes of stockholders was changed. What were potential rights in Class B stockholders became vested rights by the first action of the directors. Class A stockholders were eliminated as of July 1st, 1943, for they could not at the same time be stockholders and creditors in relation to the same funds. In re Phoenix Hotel Co., 6 Cir., 83 F. (2d) 724. Class B stockholders thereby acquired the rights above described. The rights of the one nor the other could be impaired or modified without their consent. We are of opinion, therefore, the circuit court should have so declared and adjudged.

The judgment is reversed.

Judge Thomas dissenting.