## Williams v. Davis et al.

May 23, 1944.

O. J. Cockrell, and Craft & Stanfill for appellant.

Grannis Bach for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

W. E. and Jesse Davis were plaintiffs below and appellant, Amanda Bach, Mattie Redwine and Jackson Building Supply Company, defendants. In a petition filed in 1942, in a form seeking a declaration of rights, practiced as an equity suit, it was alleged that the Supply Company was incorporated in 1922 with an authorized capital of $25,000 common and an equal amount of preferred stock. There were issued in amounts, $24,300 common and $14,815 preferred. The holdings of stockholders at time of suit were as follows: The Bach heirs owned $833.33, common and preferred, Redwine heirs, $400, and S. B. Williams, $211.12, of the preferred class, these being the reduced values following a meeting of February 18, 1935, at which the common stockholders voted to reduce all stock to 1/6 of its original par value. This action was necessary because of losses which required a charge off the books and to the stock of $32,595.73. At the time of the reduction Williams was the owner in non-reduced value of $1,266.72 of preferred stock.

The company had been engaged in a lumber and building material business, but due to poor business conditions the stockholders in May, 1941 voted to dissolve. Davis was president and general manager; Jesse Davis, secretary and treasurer. A resolution directed W. E. Davis to sell the property and assets of the company and to collect debts. This Davis proceeded to do, with the result at the time of filing suit there was in the treasury about $2,431.32 subject to debts and distribution.

The petition alleged that all owners of stock, both common and preferred, save Williams, had accepted the reduced values as per the vote; Williams refusing, claimed that he was entitled to receive from the distributable assets the par value of his stock unreduced. The prayer of the petition was for a judgment "winding

up the affairs'' of the company, and declaring the rights of stockholders.

Williams by answer contended that the resolution was void, because while all the common stockholders voted, the preferred holders were not ''given a chance to vote.'' As a secondary defense it was alleged that no statement of the reduction was filed as provided by section 553, Ky. Stats., KRS 271.130. Williams claimed that the officers of the company had refused to pay him the face of the stock or any dividends. He made his answer a cross-petition against the company, and counterclaim against W. E. and Jesse Davis. He admitted that the corporate articles provided that the common stockholders should control the business affairs of the corporation, but that under the statute before the capital could be reduced it was necessary that holders of 2/3 of both the common and preferred stock must consent in writing. He asked judgment against the corporation for the value of his stock, plus dividends, and against W. E. and Jesse Davis on his counterclaim, based on the ground that they had for fifteen years conducted the business as if it belonged to them, and that they had taken over assets of the company of the value of $8,000 for which they should be compelled to account, a matter about which he made no tangible complaint until the suit.

· The pleading met with a reply in denial from the Davis plaintiffs and Supply Company, both asserting that had there been no reduction Williams would have been entitled to no more than his share of the assets in the proportion represented by his holdings. There were other and numerous pleadings which, as we read the record, are not involved in this appeal. In some of the Williams pleadings it was alleged that the corporate articles provided that on and after October 1, 1942 any holder of preferred stock might declare the same due, together with accrued dividends and demand and receive payment for the stock at par and accrued dividends, and that ''he has demanded of the company and the Davis defendants'' the face value of his stock, and dividends at the rate of 8% from April, 1932, and his demand was refused. Plaintiffs plead that Williams had been paid all dividends on his stock up to and including 1932, except that there was due on the 1932 dividend $42.43; that on January 10, 1933 the directors duly and

regularly voted to discontinue dividends, and none had been paid on any stock, common or preferred, until after the par value was reduced, because the company was not making profits. They denied that the Redwines, Bachs or others had been paid any dividends, except upon the reduced values of their stocks. They show that they had paid out certain expense items, and the Davis plaintiffs $965, on their common stock, leaving for distribution $1,187; that due to the controversies they were compelled to employ counsel, and they asked allowance of a reasonable compensation.

After issues were completed considerable proof was taken by deposition. To discuss it at length would not be of help in solving the questions raised. It can be said that a reading shows a failure on the part of Mr. Williams to uphold his claim that plaintiffs had so mismanaged the property as to subject them to liability. The proof in the main went to a showing of reasons for the reduction of stock values, and the later dissolution, and proceedings (by exhibits) resulting in these actions by the stockholders and directors, all justifying the chancellor in holding that Mr. Williams was only entitled to take from the assets the reduced value of his stock, less a small sum which he owed the company, plus what was apparently dividends as had been paid to other preferred stockholders following dissolution. The chancellor in what we conceive to be a fair and equitable settlement ordered all debts paid, and a proper distribution of the assets; no one other than Mr. Williams is complaining.

The legal questions involved are whether Mr. Williams has suffered any loss for which he may have redress, because he was not invited to vote on the reduction; the consent to reduction was not in writing, and the statement of reduction was not fiiled as per KS 553. We do not conceive that either of these failures deprived Mr. Williams of any of his rights. It is true, as appears, there was no consent in writing. One stockholder had consented in writing, and all of the common stockholders and the holders of two-thirds of the preferred stock were present, voting favorably, and at the meeting accepted the certificates issued on the reduced values. There was no charge of fraud in the transaction, and it is shown that Mr. Williams knew of the condition of the company, and the pending plan to reduce values of all the stock.

It appears in the record that at the reduction meet-

ing all of the common stockholders (243 shares reduced) voted. There were then outstanding 148.15 shares (reduced) of preferred stock, of which 100.3 shares were owned by those present and voting, or who had consented. Thus there was more than 2/3 of the outstanding stock present and voting favorably. The fact that the officers by inadvertence failed to file statement of the reduction in the proper office did not affect Mr. Williams' rights; that provision of the statute is for the benefit of the public; to protect the rights of creditors or those of the public dealing with the corporation. Husband v. Linehan et al., 168 Ky. 304, 181 S. W. 1089, Ann. Cas. 1917D, 954.

There is likewise no merit in the contention that the reduction was void because Mr. Williams was not invited to vote. Appellant's counsel cites two cases in an endeavor to show that this court has held that he was so entitled; neither has anything like such effect. In Rider v. John G. Delker & Sons Co., 145 Ky. 634, 140 S. W. 1011, 39 L. R. A., N. S., 1007, and in Haggard v. Lexington Utilities Company, 260 Ky. 261, 84 S. W. 2d 84, 87, relied upon by appellant, we did say (in the latter case) and substantially in the first: "The capital stock of a corporation is the amount paid in by the stockholders in money, property, or services * * * and it is immaterial how the stock is classified. * * * The term 'capital stock,' as used in section 553 of the Statutes designates the amount of capital contributed by the stockholders for the use of the corporation."

The question was not presented in that case as to the right of preferred stockholders to vote. Indeed it could not have been since a reference to the record in that case shows that the preferred stock under articles was allowed to participate. The question there was whether or not under the statute an amendment reducing the stock should have had the consent in writing of two-thirds of each class of stock, or only of the total of the outstanding stock, or consent of two-thirds of the money value of two-thirds of the stock. We held the amendment good, because the records showed that it had been adopted by a vote of two-thirds of the money paid by all classes of stockholders, just as appears here.

Aside from other reasons why Mr. Williams had no just complaint on his being ignored in the meeting, we find that the articles of incorporation provided that the

owners of the common stock should control the business affairs of the corporation; that only those of the duly recorded common stockholders should be entitled to vote at any meeting, regular or special. Mr. Williams' certificate bore the endorsement: "The preferred stock herein provided for shall not be entitled to any vote or to participate at any time in stockholders' meetings." The general rule of corporate law is that in the absence of constitutional or statutory provisions, it is within the power of a corporation to provide in its charter or stock certificates that holders of the preferred stock shall have no voting power; particularly is this true where, as here, the charter may provide for preferences and priorities. Such provisions do not violate any rule of common law, nor are they contrary to public policy. The matter is one purely of agreement between the two classes of stockholders. Taylor v. Axton-Fisher Tobacco Co., 295 Ky. 226, 173 S. W. 2d 377, 148 A. L. R. 834. Another rule is that because of losses, preferred stock must suffer a reduction proportionately with the common stock. Fletcher Encyc. Corporations, Vol. II, section 5301 et seq. Here the rights of preferred stockholders rested upon an express contract, that is the provisions of the charter carried into Mr. Williams' certificate. Clearly from the record before us the chancellor reached correct conclusions and the judgment is affirmed.