## ZAHN v. TRANSAMERICA CORPO-
RATION.

### No. 490.

District Court, D. Delaware.

Sept. 5, 1945.

Samuel Handloff, of Wilmington, Del., for plaintiff.

Hugh M. Morris and Edwin D. Steel, Jr. (of Morris, Steel & Nichols), all of Wilmington, Del., for defendant.

LEAHY, District Judge.

This is an action by plaintiff as a class A stockholder of Axton-Fisher to recover damages for defendant's fraud in causing Axton-Fisher to redeem its class A stock at $80.80 per share on July 1, 1943, instead of permitting the class A stockholders to participate in the liquidation of Axton-Fisher, which occurred in June of 1944. Plaintiff charges that if the class A stock had not been redeemed at $80.80 per share the class A stockholders would have received upon liquidation of Axton-Fisher, pursuant to its charter,[1] not less than $240 per share, and that defendant, by causing the redemption of the stock and thus precluding its holders from participating in the liquidation, enriched itself as the majority and dominant class B stockholder in the amount of $2,451,202.

The complaint purports to state two causes of action: The first, on behalf of plaintiff and all other class A stockholders who surrendered their certificates and received the redemption price of $80.80 per share; and the second, on behalf of plaintiff and all other class A stockholders who have not surrendered their certificates for redemption. Plaintiff alleges that he surrendered part of his class A holdings for redemption but that he still holds certificates for 20 shares which have not been surrendered. The matter is before the court upon defendant's motion to dismiss the complaint. The facts made by the complaint and motion to dismiss so far as they relate to the cause of action by plaintiff as holder of certificates which were not surrendered pursuant to the redemption will be recited.

In May, 1941, defendant purchased 80,160 shares of class B common stock of Axton-Fisher, which was over 70% of that class, and 46% of the total voting stock of Axton-Fisher. By March 31, 1943, defendant had increased its class B holdings to about 80% of the issue and had also acquired 30,168 shares of class A stock. Later defendant converted all of its class A common stock into a like number of class B stock and purchased additional shares of class B stock. As a result of these purchases and exchanges defendant, by May 31, 1944, owned virtually all of the class B common stock.

In the latter part of 1942 and in the spring of 1943, the principal asset of Axton-Fisher was its leaf tobacco which cost $6,361,981 and which was carried on its books in that amount. As a result of the sharp increase in the market price of leaf tobacco, due to war conditions, the inventory of Axton-Fisher in March and April of 1943 amounted to about $20,-000,000. This fact was unknown to the public holders of class A common stock of Axton-Fisher.

To appropriate to itself virtually all of the benefits of the extraordinary rise in the market value of the tobacco inventory and of the other assets of Axton-Fisher, defendant determined to effect a merger or dissolution of Axton-Fisher and an accompanying sale, liquidation or transfer of all of its assets; but in order to make it appear that the redemption was incident to the continuance of the business as a going concern, defendant determined to defer the merger, dissolution or liquidation until after the redemption of the class A stock had been completed. On April 30, 1943, defendant caused Axton-Fisher to call for redemption on July 1, 1943, all of its issued and outstanding class A stock at a price of $60 per share and accrued dividends of $20.80 per share, or a total of $80.80 per share.

On May 31, 1944, defendant caused Axton-Fisher to be dissolved. On June 20, 1944, defendant caused Axton-Fisher to

[1] The rights of the Class A stockholders upon liquidation and merger are stated in paragraph (i) of Article IV of the Axton-Fisher charter as follows:

"In the event of the dissolution, liquidation, merger or consolidation of the corporation, or sale of substantially all of its assets, whether voluntary or involuntary, there shall be paid to the holders of the preferred stock then outstanding One Hundred and Five Dollars ($105.00) per share, together with all unpaid accrued dividends thereon, before any sum shall be paid to or any assets distributed among the holders of the Class A common stock and/or the holders of the Class B common stock. After such payment to the holders of the preferred stock, and all unpaid accrued dividends on the Class A common stock shall have been paid, then all remaining assets and funds of the corporation shall be divided among and paid to the holders of the Class A common stock and to the holders of the Class B common stock in the ratio of 2 to 1; that is to say, there shall be paid upon each share of Class A common stock twice the amount paid upon each share of Class B common stock, in any such event."

sell to Philip-Morris Company, Ltd., Inc., substantially all of the factories, plants and facilities and a substantial part of the inventory of cigarettes and tobacco owned by Axton-Fisher. At the same time, defendant caused Axton-Fisher to distribute to its class B stockholders warehouse receipts representing all of the cigarette and tobacco inventory not included in the sale to Philip-Morris. At the time of the distribution, the defendant owned nearly all of the outstanding class B stock of Axton-Fisher and, as a consequence, defendant has been the recipient of substantially all of the entire proceeds of the sale and substantially the entire tobacco inventory represented by the warehouse receipts distributed in liquidation.

If the class A stock had not been called, the class A stockholders, upon the liquidation of Axton-Fisher, would have been entitled to have been paid their accrued dividends before any distribution was made to the class B stockholders and, in addition, the class A stockholder would have been entitled to receive twice as much upon each share of A stock as was paid upon each share of B stock.

The complaint charges that at all times since May 16, 1941, defendant has dominated the management, directorate, financial policies and affairs of Axton-Fisher; that all acts of Axton-Fisher complained of were performed under the direction, domination and control of defendant. It further charges that because of defendant's position as dominant controlling stockholder of Axton-Fisher, it owed a fiduciary obligation to all class A stockholders. It is charged that when defendant caused the class A stock to be called solely for its self aggrandizement, it violated that fiduciary obligation. Finally, it is charged that since redemption of the class A stock was not made in good faith or in contemplation of continuance of Axton-Fisher as a going concern, it was a fraudulent action and hence invalid and of no force and effect.

The complaint charges that, as a result of the actions of defendant, it has appropriated to itself at least $2,451,202 which legally and equitably belongs to the class A common stockholders, in addition to the purported redemption price of $80.80 per share which they have received.

The second cause of action is brought by plaintiff as a former holder of certificates representing 215 shares of class A stock which were surrendered pursuant to the redemption. The complaint, as it relates to this cause of action, embodies all the allegations of the other cause of action. In addition, it is charged that on June 16, 1943, the directors of Axton-Fisher attempted to make the redemption of the class A stock optional with the class A stockholders rather than mandatory, as contemplated by an earlier action of the directors; but that the Court of Appeals of the State of Kentucky on July 15, 1943, held that that action of the directors was invalid. All of the plaintiff's stock was purchased after July 1, 1943, the redemption date, and part, at least, was acquired with full knowledge that the Court of Appeals had held that redemption was mandatory. See Taylor v. Axton-Fisher Tobacco Co., 295 Ky. 226, 173 S.W.2d 377, 148 A.L.R. 834.

The motion to dismiss raises two questions. The first is whether the redemption of the class A stock is invalid because of the alleged fact that defendant planned to dissolve, liquidate, merge or consolidate Axton-Fisher following redemption, and further whether the redemption provision of the charter, as a matter of construction, authorizes what Axton-Fisher actually did.[2] The second is whether, assuming a valid cause of action on behalf of plaintiff individually, the complaint states a good cause of action on behalf of members of the classes for whose benefit the action is brought. Since my holding on the first point is dispositive of the motion before me, I shall not discuss the second question.

1. The redemption was authorized by the Axton-Fisher charter. The redemption clause grants to Axton-Fisher the option to redeem its class A stock "on any quarterly dividend payment date".

[2] The power of Axton-Fisher to redeem the Class A stock is found in Paragraph (f) of Article IV of its charter:

"The whole or any part of the Class A Common stock of the corporation, at the option of the Board of Directors, may be redeemed on any quarterly dividend payment date by paying therefor in cash Sixty Dollars ($60.00) per share and all unpaid and accrued dividends thereon at the date fixed for such redemption, upon sending by mail to the registered holders of the Class A common stock at least sixty (60) days' notice of the exercise of such option * * *."

Other than this, there is no qualification or limitation of any kind as to the time when redemption may take place. But plaintiff argues that the redemption provision is not applicable in case of or in contemplation of dissolution, liquidation, merger, or consolidation or sale of substantially the entire assets, whether voluntary or involuntary, of Axton-Fisher. I think this argument misses the point, for clearly the liquidation and merger provisions are operative only if the class A stock is outstanding when the merger or liquidation takes place. Application of Silberkraus, 250 N.Y. 242, 165 N.E. 279, 78 A.L.R. 1113. After the retirement of a class of stock, all rights adhering to the shares of that class are in the very nature of things destroyed. And it has been decided by the Court of Appeals of Kentucky in Taylor v. Axton-Fisher Tobacco Co., supra, 173 S.W.2d 377, that Axton-Fisher has the right by express contract to call the class A stock at any time. The construction of the charter by the highest court of the State of incorporation obviously controls here. See Geller v. Transamerica Corporation, D.C., 53 F. Supp. 625.

■ 2. The real basis of plaintiff's argument, however, is that there was a fiduciary relationship between plaintiff and defendant at the time of the redemption and that there was a breach of fiduciary duty by reason of defendant's failure to disclose the increase in the value of the leaf inventory. Moreover, plaintiff urges that at the time of the redemption, defendant intended to merge or dissolve Axton-Fisher and, as owner of substantially all of the class B stock, it would accordingly receive a substantial benefit as a result of the price redemption of the class A stock. I have held in Geller v. Transamerica Corporation, supra, 53 F. Supp. 625, that, on the basis of Kentucky law, there is no fiduciary relationship between defendant and class A stockholders, and a re-examination of the question has not induced me to change that holding.

■ 3. Now the only question which remains is whether the redemption should be held illegal because it resulted in a benefit to the class B stockholders and because at the time of the redemption it was contemplated that a dissolution or merger would take place in the near future. There is no merit to this contention. In the Taylor case, supra, the highest court in Kentucky held that the class A stock could be redeemed although the action exclusively benefits the class B stockholders and that Axton-Fisher's board of directors had no power even to make the redemption optional with the holders of class A stock. That holding is conclusive here. See Geller v. Transamerica Corporation, supra.

■ But even in the absence of the Kentucky holding, I think defendant's position is patently fallacious. Plaintiff takes the position that the inclusion of paragraph (i) of article IV in the Axton-Fisher charter, setting forth the rights of class A stockholders upon merger or liquidation, serves by implication to prohibit the corporation from redeeming its class A stock whenever the net worth of the company is such as to give the class A stock a value upon liquidation or merger in excess of the redemption price. If plaintiff's argument were sound, there would be complete rigidity of corporate flexibility. All corporate action would, of necessity, be referrable to the time when the charter was written. There would be little point in having redemption provisions in a charter if stock could only be redeemed in situations where the financial condition of a company were such that the particular shareholders would not receive more money in case of a sale or merger. Under plaintiff's theory, the contract of the class A or preferred stockholders is a one-way affair. If the redemption price is more than they would be entitled to upon sale or liquidation, then redemption is permissible; if less, then it is illegal. If this be the rule, then risk capital would soon disappear. Hindsight may convince the holders of class A stock that their agreement was a bad one and the charter should have provided that there could be no redemption where the net worth of the company is sufficient to give the class A stock a value upon liquidation in excess of the redemption price.[3] But this was not done

---

[3] The redemption feature of the preferred stock is often prejudicial to the holders because it tends to put a ceiling on its market price. A 5% preferred stock, for example, not subject to redemption, might in a particular market, because of the secure yield due to the large amount of assets behind it, sell at 140 or 150. The redemption price serves to prevent the stock from selling much above the call price, but this has never been urged as a reason against the validity of a redemption. See Gerstenberg, Financial Organization and Management of Business, p. 128.

and they entered into the agreement without compulsion and of their own choice; and the terms of the agreement are plain. This view of the matter has support. Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corporation, 282 Mass. 367, 185 N.E. 383, 88 A.L.R. 1122; Mannington v. Hocking Val. R. Co., C. C. Ohio, 183 F. 133, 143; Weidenfeld v. Northern Pac. R. Co., 8 Cir., 129 F. 305, 310. In condemning the call of the Axton-Fisher A stock plaintiff, I think, refuses to accept the fundamental proposition that a charter provision authorizing a corporation to redeem its stock is simply a contract by which the stockholders give to the corporation an option to purchase their shares at a stated price. Those in control of a corporation will always redeem a preferred stock where such redemption is in their financial interest. There is no legal or equitable objection to such a charter provision.

There is no merit in the complaint and it should be dismissed.